110 So.2d 871 (1959)
Vincent R. FULCO et ux., Plaintiffs-Appellants,
v.
LUMBERMEN'S MUTUAL CASUALTY COMPANY, Defendant-Appellant,
Rountree Olds-Cadillac Company, Inc., Third Party Defendant-Appellee.
No. 8982.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1959.
*873 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for plaintiff-appellant.
Bodenheimer, Looney & Richie, Shreveport, for defendant-appellant.
Blanchard, Goldstein, Walker & O'Quin, Shreveport, for third party defendant.
Before GLADNEY, AYRES and JAMES E. BOLIN, JJ.
GLADNEY, Judge.
Vincent R. Fulco and his wife brought this suit to obtain judgment for medical expenses and damages for personal injuries of Mrs. Fulco occasioned by an automobile accident in Shreveport on the morning of July 31, 1957. When injured Mrs. Fulco was a guest in an automobile operated by Mrs. Helen Branum, whose insurer, Lumbermen's Mutual Casualty Company, was named defendant herein. The insurer in answer to plaintiffs' petition denied Mrs. Branum was at fault, charged Mrs. Fulco with contributory negligence, and by third party petition called in Rountree Olds-Cadillac Company, Inc. as a defendant, averring that the accident was proximately caused by the failure of said company to properly service the brakes of the Branum car when requested to do so a short time prior to the date of the accident. Plaintiffs, by supplemental petition also made the Rountree Olds-Cadillac Company, Inc. a defendant. Thereafter the third party defendant filed an exception of no cause or right of action, which was overruled by the trial judge, and answered denying its negligence. The issues thus presented were submitted to a jury which rendered verdicts in favor of Vincent R. Fulco and Mrs. Olive Fulco in the amounts of $681.31 and $2,500 respectively, and rejected the demands against the Rountree Olds-Cadillac Company, Inc. Plaintiffs and Lumbermen's Mutual Casualty Company have appealed and answers to the appeals have been filed by Lumbermen's Mutual Casualty Company and Rountree Olds-Cadillac Company, Inc.
The first and principal issue to be reviewed is whether or not Mrs. Branum, the operator of the vehicle in which Mrs. Fulco was riding, was guilty of negligence. The charge is denied by the insurer, who asserts the accident was caused by defective brakes of which its insured was unaware for the Cadillac automobile she was driving had been serviced at the Rountree Olds-Cadillac Company, Inc. a few days prior to the accident, at which time the brakes on the automobile were inspected and adjusted.
On the morning of the accident, by pre-arrangement, Mrs. Branum left her home on Gilbert Street for the purpose of picking up Mrs. Fulco who resided at 122 E. Dalzell Street, and continuing to the home of Mrs. Branum's mother-in-law approximately fourteen miles away. Mrs. Branum was accompanied by her three children and after Mrs. Fulco entered the vehicle the party proceeded along a route from Dalzell to Jordan, to Fairfield, and along Jordan to Allen Avenue, where the accident occurred. Upon nearing the intersection of Jordan Street with Allen Avenue Mrs. Branum attempted to apply the brakes on her vehicle and when the brakes failed to function the Cadillac car crashed into the *874 rear of a Chevrolet automobile being driven by W. S. Buchanan, which was stopped at the intersection in response to a signal light indicating red toward traffic on Jordan.
Lumbermen's Mutual Casualty Company contends the failure of Mrs. Branum's brakes to work was occasioned by some defect and that she was not aware of the unsound condition of the brakes prior to the accident. Unfortunately, for the defendant, however, the preponderance of the evidence discloses Mrs. Branum was aware of the defective condition of her brakes before the collision and there then devolved upon her a duty to take immediate action by investigating and correcting the condition.
Mrs. Branum admitted she experienced difficulty in stopping her car at the corner of Texas and Jordan Streets where she had to pump the brake pedal in order to bring her car to a stop. She testified that the brakes were not holding when she arrived at the intersection of Dalzell and Fairfield and because of the condition of the brakes she was traveling at a low rate of speed. Her concern was communicated to Mrs. Fulco wh suggested they transfer to her automobile, but Mrs. Branum rejected the suggestion, stating the brakes had been inspected a few days before. Between the corner of Dalzell and Fairfield and the place of the collision, Mrs. Branum passed several service stations and garages where it would have required but a few minutes to stop and have the condition of the brakes determined. She was negligent in not doing so. Mrs. Branum was negligent also in failing to utilize the emergency brakes. She testified that as she approached the Buchanan vehicle and discovered her brakes would not hold, she still had ample time to apply the emergency brakes, but did not think of it.
The insurer tendered evidence to show the Branum automobile was left at the Rountree Olds-Cadillac Company, Inc. on July 23rd, eight days prior to the collission, at which time it was inspected as to the condition of its brakes, which were adjusted and road tested before re-delivery to the owner. Thereafter the car was driven approximately eight hundred miles prior to the accident. The automobile was taken back to Rountree Olds-Cadillac Company, Inc. on two occasions between July 23rd and July 31st for washing, but no complaint was made as to the condition of the brakes. This evidence is entirely sufficient, in our opinion, to exonerate the automobile company from negligence.
A well recognized rule of law is that one who operates an automobile with defective brakes is guilty of negligence if he continues to do so after he has become aware of, or in the exercise of ordinary care, should have become aware of the fact the brakes were defective. Woodward v. Tillman, La.App.1955, 82 So.2d 121; Le Bourgeois v. Indiana Lumbermens Mutual Insurance Co., La.App.1958, 101 So.2d 720. The following quotation from Woodward v. Tillman is indicative of the responsibility so required of a motorist [82 So.2d 123]:
"The insured testified concerning the first time the brakes locked that he `had fully intended should the car continue to grab to take it on and have Audubon Motors repair the brakes, but apparently, after trying it several timesabout four times' he was satisfied in his `own mind that possibly there had been some slick tar on the road back there that the opposite wheel had slid in and didn't make it have the same friction bearing.' The insured owes the public a duty of reasonable care in the operation of his automobile upon the public thoroughfares. He failed to perform this duty when he neglected to have his brakes checked and repaired by a mechanic after he became aware that they were probably defective. The mere possibility that the incident had been caused by slick tar on the road does not relieve the insured of his duty to the public."
*875 Nor should Mrs. Branum be legally excused from her failure to use the emergency brake. The Louisiana traffic regulatory statute, LSA-R.S., Title 32, § 284, provides in part:
"Every motor vehicle, other than a motorcycle, when operated upon a public highway of this state, shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels. If these two separate means are connected in any way, they shall be so connected that failure of either shall not leave the motor vehicle without brakes on at least two wheels."
The requirement of the statute that every automobile be equipped with an emergency brake is strictly a safety measure, the use of which must be resorted to in cases of emergency where the ordinary foot brake is ineffective. It is logical to infer that had Mrs. Branum utilized the emergency brake which was convenient, she would have, according to her own testimony, timely stopped her automobile prior to its collision with the Buchanan car.
The testimony does not establish any conduct on the part of Mrs. Fulco which may be construed as contributory negligence. The basis of defendant's plea is that Mrs. Fulco had become aware of the defective nature of the brakes on the automobile in which she was traveling and it was her duty to either request of Mrs. Branum to have her brakes examined at a nearby service station, or leave the car. We do not find that Mrs. Fulco was aware of the dangerous condition of the brakes. Although she had suggested to Mrs. Branum they return and transfer to the Fulco automobile, Mrs. Branum replied by saying she considered the brakes were all right as they had been recently repaired. The testimony of Mrs. Fulco indicates she was not too attentive to the operation of the automobile since she regarded Mrs. Branum as a competent driver. These circumstances suffice to exonerate Mrs. Fulco from charges of contributory negligence.
Under ordinary circumstances a passenger may rely upon the care and skill of the driver and is under no duty to supervise the driving of the vehicle or to maintain an independent lookout. However, a guest has an obligation to avoid an accident when aware of a danger which apparently is unknown to the driver, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver. Rodriguez v. State Farm Mutual Insurance Co., La.App.1956, 88 So.2d 432.
By way of its answer to the appeal, the third party defendant, Rountree Olds-Cadillac Company, Inc. re-urges an exception of no cause or right of action which was overruled by the trial court. Exceptor argues that since the insurer alone is made defendant, it can only use the third party defendant procedure in the event Mrs. Branum is guilty of negligence, and that if Mrs. Branum is guilty of negligence, such negligence being of a contributory nature would bar recovery against the exceptor. We are inclined to the view that the trial court was correct in its preliminary ruling as evidence adduced upon a hearing conceivably could result in the finding of concurrent negligence on the part of both Mrs. Branum and exceptor.
We find the negligence of Mrs. Branum was the sole and proximate cause of the accident. This conclusion brings us to a consideration of the award which should be allowed plaintiffs.
Mrs. Fulco, a housewife about fifty years of age, testified that prior to the accident she customarily performed most of her housework and gardening and not infrequently played bridge and indulged in square dancing; that since the accident she has constantly suffered from pain in her *876 back, for which she was treated over a period of more than two months by Dr. T. R. Gilchrist, an osteopath who administered massages and diathermy. Further, she said she was required for about a year to wear a heavy, clumsy brace, and for an indefinite period in the future she will have to sleep on a board, both of which experiences she said were most uncomfortable. She likewise stated she was handicapped in the performance of her household duties for a year prior to the trial of the case and had employed some additional help. Mrs. Fulco testified she felt no immediate effects at the time of the accident and later during the morning she and Mrs. Branum transferred to another vehicle and filled their bridge engagement at the home of Mrs. Branum's mother-in-law; that while engaged in the bridge game she felt pain in her back and obtained aspirin to relieve the condition; that over the weekend she journeyed with friends to Longview, Texas, and while on the way suffered such acute back pain she stopped to have a treatment by a chiropractic who, however, declined to treat her, but recommended she see Dr. Gilchrist, an osteopath of Shreveport; that after the treatment by Dr. Gilchrist without marked improvement she called on Dr. J. E. Holoubek, who placed her in the Schumpert Sanitarium for diagnostic purposes. While there she was X-rayed and given a thorough clinical examination.
Dr. Holoubek concluded Mrs. Fulco was suffering from a compression fracture of the first lumbar vertebra and osteoporosis, a condition described as softening of the bone. Because of the orthopedic nature of the case, Dr. Holoubek called into the case Dr. E. C. Simonton, an orthopedist specialist.
Dr. Simonton prescribed the wearing of a Blair brace, which appears to be a heavy type of corset designed to hold the spine in a rigid condition. He also recommended that Mrs. Fulco sleep upon a board placed between the mattress and springs of her bed.
In addition to the examinations and treatments by Drs. Holoubek and Simonton, the insurer caused plaintiff to be examined on three separate occasions by Dr. Willis J. Taylor, an orthopedist. Drs. Holoubek, Simonton and Taylor determined from their examinations of X-rays taken by them and some taken by Dr. Harwell, a radiologist, at the request of Dr. Gilchrist, that Mrs. Fulco had sustained a slight compression of the first lumbar vertebra; they also agreed the patient had osteoporosis and hypertrophic arthritis. Their opinions held the osteoporosis and the hyperthrophic arthritis conditions were not attributable to the accident, but were due to congenital or developmental causes. All conceded osteoporosis tends to make the patient more susceptible to bony injuries because of the softened condition of the vertebra. The two orthopedists, Drs. Simonton and Taylor, agreed the compression fracture was slight and several months prior to the trial of this case on November 6, 1958, the fracture had healed with very little residual disability. Dr. Simonton estimated that Mrs. Fulco would have a partial permanent disability of from ten to fifteen per cent of the body as a whole for the remainder of her life. Dr. Taylor likewise evaluated the disability at five to ten per cent. Both conceded Mrs. Fulco could now do practically everything she could do prior to the accident, and without pain or difficulty. Dr. Holoubek likewise testified Mrs. Fulco was without any serious residual effects from the injury.
Counsel for Lumbermen's Mutual Casualty Company earnestly insists there is a serious question as to whether Mrs. Fulco sustained a compression fracture and points to the report of Dr. Harwell, an experienced radiologist, who, following an X-ray of Mrs. Fulco's spine on August 16, 1957, reported a finding of no bone injury. Upon trial of the case Dr. Harwell confirmed his belief as to the correctness of this finding. His disagreement with the findings of Drs. Holoubek, Simonton *877 and Taylor, in our opinion, must yield to the weight of the evidence which indicates the existence of a compression fracture. This finding also disposes of the contention made by the defendant that the fracture of the first lumbar vertebra could have occurred subsequent to the date of the accident.
Plaintiffs have appealed from the jury verdicts in their favor due to their dissatisfaction with the amounts allowed. Before this court Mr. Fulco asserts he should be awarded an additional $200 for estimated future medical expenses. The jury awarded Mrs. Fulco $2,500. On this appeal her counsel requests that the amount of the judgment be increased to $15,000.
The record, in our opinion, does not indicate any future expenses will be incurred in connection with the fractured vertebra, which is the only injury we can attribute to the accident. For this reason the claim for additional medical expenses is denied.
At the time of trial, fifteen months after the accident, Mrs. Fulco still continued to suffer occasional pain in her back; she was still handicapped to some extent in her household activities; and she had discontinued engaging in square dancing save to a minor extent. She further complained of inability to sit in a chair for an extended period of time without having to place a pillow or some support behind her back. We do not doubt there will be a certain amount of residual disability and pain, though minor in nature, which will be with her the balance of her life.
As frequently pointed out in the decisions of the appellate courts, there is no definite rule applicable to all cases for the measurement of damages in personal injury actions and the amount to be awarded must be determined from the facts peculiar to the instant case. It is recognized also that a degree of uniformity of awards in the court decisions should be maintained so far as possible. Of necessity many factors enter into the evaluation of a court award for personal injury.
Counsel for Mrs. Fulco has referred the court to the following decisions as supporting the request for a substantial increase in the award to his client: Wainwright v. Globe Indemnity Co., La.App. 1954, 75 So.2d 554; Baker v. United States Fire Insurance Co., La.App.1956, 89 So.2d 405; Currie v. Government Employees Insurance Co., La.App.1956, 90 So.2d 482; Cush v. Griffin, La.App.1957, 95 So.2d 860; and Lampkin v. United States Fidelity & Guaranty Co., La.App.1957, 99 So.2d 147. We find after an examination of the cited cases none of them is controlling or helpful in arriving at a proper award. More appropriate, in our opinion, are: Norwood v. Burford, La.App.1955, 83 So.2d 570; Merchant v. Montgomery Ward & Co., Inc., La.App.1955, 83 So.2d 920; and Jackson v. Young, La.App.1957, 99 So.2d 400.
In Norwood v. Burford the sum of $4,000 was awarded to a man who in an automobile accident sustained bruises and a vertebral fracture and who complained of pain at the time of trial. Merchant v. Montgomery Ward & Co., Inc. involved a fifty-three year old woman who sustained a compression fracture of the eighth thoracic vertebra and possible rupture of the fifth lumbar intervertebral disc, which left her in constant pain across the lower portion of her back, and was limited in her reach, and for the alleviation of such condition a major operation was recommended. She was awarded $7,500.
The appellate court in Jackson v. Young approved an allowance of $4,526.70 to a man who suffered a fracture of the first lumbar vertebra, who was hospitalized for more than a month, was unable to do any hard work or labor of any kind at the time of trial, and who did not regain maximum rehabilitation until the expiration of six to eighteen months.
We think Mrs. Fulco's injury consisting of a slight compression fracture of the first lumbar vertebra is not so serious or disabling as those injuries considered in the last referred to cases. Our conclusion *878 is that the award should be increased to Four Thousand ($4,000) Dollars.
For the reasons above assigned, the judgment will be amended to increase the award in favor of Mrs. Olive Fulco to the amount of Four Thousand ($4,000) Dollars. As so amended the judgment in all other respects is affirmed. The costs of this suit, including cost of this appeal, are assessed against Lumbermen's Mutual Casualty Company.
HARDY, J., absent.