PIOOD, Judge.
This is a tort action in which plaintiff, Cline G. Broussard, seeks to recover from Marius C. Lormand and his public liability insurer, State Farm Mutual Automobile Insurance Company, damages for personal injuries alleged to have been sustained by plaintiff as a result of a motor vehicle collision. The case was tried by jury, and the trial resulted in a verdict for plaintiff for the sum of $3,000.00. Judgment was rendered in accordance with that verdict, and plaintiff has appealed from that judgment. Defendants have answered the appeal, praying that the judgment appealed from be affirmed.
The only issue presented on this appeal relates to quantum. Plaintiff contends that the award should be increased, and defendants contend that it is adequate and should not be disturbed.
The accident which gave rise to this suit occurred about 7:00 A.M. on January 18, 1960, while plaintiff was riding as a passenger in the back seat of an automobile being driven on a public highway in Calcasieu Parish by Earl Woolman. The Woolman car was brought to a stop on the highway, and shortly thereafter it was struck from the rear by an automobile being driven at a speed of about 20 miles per hour by defendant Lormand. The force of the impact knocked the Woolman ear five to eight feet forward, causing it to strike another vehicle which had stopped ahead of it.
Plaintiff was en route to his place of employment at Cit-Con Oil Corporation, in Calcasieu Parish, at the time the accident occurred. He remained at the scene of the accident for five or ten minutes, and then was taken to the Cit-Con plant by someone else. Within an hour after his arrival at the plant, however, he reported for first aid treatment because of pain in his neck and jaw, and because he could hardly open.his mouth. The nurse then called the company doctor, Dr. J. W. Crookshank, a general practitioner, who examined plaintiff on that day and had X-rays taken of plaintiff's neck *679 and back. Dr. Crookshank has treated plaintiff continuously since that time. Plaintiff also consulted Dr. Norman P. Morin, an orthopedic surgeon, on March 11, 1960, and has been treated continuously by Dr. Morin as well as by Dr. Crookshank since that time. He was still under the treatment of these two doctors at the time of the trial on June 19, 1961, which was about 17 months after the accident occurred.
At the time of the accident plaintiff was working as a carpenter, engaged principally in building scaffolds and forms, which required a considerable amount of climbing and lifting. He had been employed by Cit-Con to do that type of work since July 24, 1951. He was temporarily classified as a journeyman carpenter at the time of the accident, but on January 24, 1960, 7 days after the accident occurred, he was reduced to a carpenter’s helper. A few days later, on February 9, 1960, he was upgraded to a permanent journeyman carpenter. We are convinced that the accident had nothing to do with these changes in ratings, but it is significant that he continued in his employment after the accident occurred. He testified that since the accident he has suffered pain in his neck, shoulder and left arm, that this pain is constant and that he has been unable to perform some of the duties of a journeyman carpenter or a carpenter’s helper since the date of the accident. He stated that he particularly is not able to do any climbing or lifting, and that his fellow-employees have to do that part of his work for him.
The evidence establishes that plaintiff returned to work the day after the accident occurred and worked for two days on that occasion, but after those two days he was compelled to miss work frequently because of his injuries and the treatment which was being administered for those injuries. He reported to Dr. Crookshank for treatment almost every day for five weeks immediately following the accident. He was then confined in the Lake Charles Memorial Hospital from March 14 through March 26, 1960, a period of about 13 days, during which time he was kept in traction and was given heat therapy, massages and exercises. Since leaving the hospital in March, and in compliance with his doctors’ recommendations, he has slept in traction every night from about 8:00 P.M. until 5:00 A.M. In order to enable him to apply this traction he obtained an apparatus from Snell’s Limbs-Braces, Inc., which consists of a head halter, pulleys, weights, etc., and by using it he applies about a seven pound pull on his head and neck while he is in a reclining position. He was still sleeping in traction every night at the time of the trial, and his treating physicians recommend that he continue to do so for an indefinite period of time. Also, for five weeks, beginning August 1, 1960, he was required to return to the hospital almost every day for physical therapy, and during the remainder of each day during that five-week period he was kept in traction at his home.
As a result of the accident it was necessary for plaintiff to be off work for a period of 11 weeks and 3 days. His employer continued to pay him during the time he was off work, however, except for a period of four days for which he was not paid. He was earning $25.80 per day at the time of the accident, so his loss of earnings amounted to $103.20. He has worked regularly since the first part of September, 1960, although he says he does so with pain, and that since he is not able to lift or to climb because of his injuries it is necessary for his fellow-employees to “carry him”, or to do some of his work for him. The evidence shows that plaintiff has never before suffered any injury to his neck, shoulder or back, and he has never had any complaints with reference to those parts of his body prior to this accident.
Dr. Crookshank, who examined plaintiff on the day of the accident and has treated him continuously since that time, testified that plaintiff sustained a whiplash type injury as a result of the accident. In his opinion plaintiff has been disabled from *680 climbing and lifting since the injury was sustained, and that he suffers pain while attempting to perform the duties of his employment. He recommends that plaintiff ■continue to apply traction to his head and neck at night, and stated that in his opinion it is possible that in time plaintiff will become symptom free, but that it also is possible that his condition will become worse, and that surgery may be necessary to relieve him. Dr. Crookshank conceded that he had authorized plaintiff to return to light work on February 18, 1960, one month after the accident occurred, and that he authorized his return to full duties on March 26, 1960, which was the day he was released from the hospital. He states, however, that it was his understanding that plaintiff was "being carried” by some of his fellow-employees, and that in his opinion plaintiff was actually disabled and was suffering the pains of which he complained.
Dr. Morin, who has treated plaintiff since March 11, 1960, testified that in his opinion plaintiff, as a result of this accident, sustained a neck muscle strain, with associated pinching of the nerves between the sixth and seventh cervical vertebrae, and that he had not recovered at the time of the trial, 17 months later. Dr. Morin also found that some arthritic changes in plaintiff’s vertebrae had taken place before the accident, and that this arthritic condition may be responsible to some extent for the prolonged period of recovery. X-rays taken shortly before the trial revealed that the arthritic condition was not aggravated by the accident, and the evidence shows that the trauma which plaintiff sustained in the accident was the cause of his pain and disability. Dr. Morin also recommends that plaintiff continue to wear the cervical traction at night. In his opinion, plaintiff has suffered a 10 to 15 per cent partial, permanent disability of the body as a result of this accident.
The only medical expert called by defendant was Dr. J. W. Ambrister, an orthopedic surgeon, who examined plaintiff on June 13, 1961, just a few days before the trial. Dr. Ambrister found hypertrophic lipping of the anterior margins of the fifth cervical vertebra, with small hypertrophic spurs which impinged upon the neural foramen between the fifth and sixth and between the sixth and seventh cervical vertebrae, bilaterally. He also found some atrophy of the left arm and an area of diminished sensation, indicating some nerve root irritation. He concluded that plaintiff’s complaints “were primarily on the basis of the arthritic changes.” Dr. Ambrister conceded, however, that if plaintiff had experienced no pain in the neck and shoulder prior to the accident, then the symptoms which he has experienced since that time must be attributed to the trauma which he received in the accident. We are convinced that plaintiff had not experienced any of these symptoms before the accident. Dr. Ambrister testified that there was nothing about plaintiff’s complaints which were inconsistent with his clinical findings, and that he did not believe that plaintiff was exaggerating any of his complaints. With reference to plaintiff's ability to work, Dr. Ambrister testified that “If the amount of discomfort which he experiences is not out of proportion to what he is willing to tolerate, I think that his condition would not be aggravated any more than him sitting at home rocking in a chair.” It appears to us that the testimony of Dr. Ambrister is consistent with that of the treating physicians, at least to the extent that plaintiff suffers the pain of which he complains. Although he feels that plaintiff’s present complaints are due to arthritic changes, he agrees that the trauma which plaintiff received in the accident definitely had something to do with his present condition, and that the trauma could have caused the preexisting arthritic condition to become symptomatic.
We think the medical testimony clearly establishes that as a result of the accident which occurred on January 18, 1960, plaintiff has sustained an injury to his neck, shoulder and arm which has partially dis *681 abled him and caused him to suffer pain almost continuously since the date of the accident. In our opinion plaintiff’s injury is more severe than the ordinary whiplash type injury, because in addition to the muscle and ligamentous injuries usually associated with a whiplash, plaintiff here also suffered a pinching of nerves between the cervical vertebrae, atrophy of the left arm, and a 10 to 15 per cent permanent partial disability of the body. Also, plaintiff has had a prolonged period of pain and suffering, it has been necessary for him to apply cervical traction daily for many months, and it will be necessary for him to continue this type of treatment for an indefinite period.
Counsel for defendants calls our attention to the testimony of Dr. Morin and Dr. Ambrister to the effect that an arthritic condition similar to plaintiff’s, which existed prior to the accident, could be the cause of symptoms similar to those of the plaintiff, just from day-to-day living, without the intervention of an accident or trauma. This is true, but the evidence in this case establishes that the symptoms which plaintiff experiences now were caused by the accident, and that they did not result from day-to-day living.
It is well recognized that awards made in similar cases are to be considered by the courts so that within the limits permitted by particular states of facts a degree of uniformity will be maintained, so far as possible and practicable, to the end that awards will not be out of all proportion one with the other. Baker v. United States Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405; Wainwright v. Globe Indemnity Co., La.App. 2 Cir., 75 So.2d 554.
The injury sustained by the plaintiff in the case of Baker v. United States Fire Insurance Co., supra, was similar to the injury sustained by the plaintiff in this case, except that Baker, unlike the plaintiff in the instant suit, also suffered from dizzy spells and headaches following the accident. The Court affirmed an award of $5,600.00 to the plaintiff, which apparently included medical expenses amounting to $341.89.
In Patin v. Mason, La.App. 1 Cir., 119 So.2d 868, an award of $6,000.00 was approved for injuries which included a neck injury, such as the one involved in the instant suit, and where there resulted a 15 per cent permanent loss of function of the neck. In that case, however, the plaintiff also sustained a serious laceration of the ear which required 14 stitches to repair and which left a scar.
In Doyle v. McMahon, La.App. 4 Cir., 136 So.2d 89, an award of $3,000.00 was reduced to $2,000.00 for an injury commonly referred to as a “whiplash,” where the plaintiff suffered pain for about three and one-half months, after which her recovery was complete and without residual. She was never hospitalized and was not required to wear a neck brace or to undergo traction. The injury which she sustained obviously was much less severe than that which was sustained by plaintiff in the instant suit.
An award of $5,000.00 was made in Faulkner v. Ryder Tank Lines, Inc., La.App. 2 Cir., 135 So.2d 494, for an injury which we think is comparable to the one sustained by plaintiff in this case. Mrs. Faulkner’s injury consisted of a cervical sprain superimposed on an arthritic neck, followed by a typical complicating occipital neuralgia. A period of 30 months was estimated for maximum recovery, following which it was estimated that she would have a permanent disability ranging from 5 to 12 per cent.
In Downs v. Hartford Accident & Indemnity Company, La.App. 2 Cir., 116 So.2d 712, an award of $3,000.00 was affirmed for a whiplash type injury, where there was no hospitalization, the plaintiff was not required to wear a neck brace or traction, and apparently no permanent disability was anticipated.
*682 In Dowies v. Traders & General Insurance Company, La.App. 3 Cir., 124 So.2d 610, the award of the trial court was increased to. $2,500.00, and in Warren v. Yellow Cab Company of Shreveport, Inc., La.App. 2 Cir., 136 So.2d 319, an award of $3,000.00 was approved. The injury involved in each of these cases appears to us to be considerably less severe than the injury involved in the instant suit.
Considering' all of the facts in this case and the awards made in other cases for similar injuries, we think an award of .$5,000.00 for the injuries and the pain and .•suffering' sustained by plaintiff in this suit as a result of the January 18, 1960, accident is fair and adequate.
The evidence also establishes that as a result of the accident plaintiff incurred hospital expenses amounting to $535.00, a bill of $19.89 for the cervical traction device which he purchased, an indebtedness to Dr. Crookshank for treatment amounting to $234.00, and a bill of $170.00 to Dr. Morin. In addition thereto he is entitled to recover the sum of $103.20, being the amount of wages he lost as a result of this accident. The special damages which he sustained, therefore, amount to the total sum of $1,-062.09.
 In our opinion the award made by the jury in this case did not adequately compensate plaintiff for the damages which he sustained as a result of the accident, and for that reason the judgment must be amended by increasing the award. We are aware of the line of jurisprudence in this State which holds that the trial court has .much discretion in the award of general damages for pain and suffering, and that the trial court’s award ordinarily will not be disturbed upon appellate review. As has already been pointed out, however, the jurisprudence also is established to the ' effect that awards should be made so that there is some degree of uniformity involving similar injuries, after taking into account the great variation in circumstances surrounding each injury. Scott v. Lumbermen’s Mutual Casualty Company, La.App. 3 Cir., 134 So. 553. In this case we think the latter rule must be applied and that the award must be increased.
For the reasons herein set out, the judgment of the trial court is amended by increasing the award made to plaintiff, Cline G. Broussard, from $3,000.00 to the sum of $6,062.09, and, as amended, the judgment is affirmed. The costs of this appeal are assessed to defendants-appellees.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.