158 So.2d 149 (1963)
245 La. 239
Aline GASPARD
v.
Bradley C. LeMAIRE et al.
Nos. 46511, 46516.
Supreme Court of Louisiana.
June 4, 1963.
Dissenting Opinion June 19, 1963.
Rehearing Granted in Part and Denied in Part June 28, 1963.
On Rehearing November 12, 1963.
Application Denied, Application not Considered December 20, 1963.
*150 Simon & Trice, Lafayette, for relatrix (No. 46,511).
Davidson, Meaux, Onebane & Donohoe, Richard C. Meaux, Voorhies, Labbe, Fontenot, Leonard & McGlasson, by H. Lee Leonard, Lafayette, for defendant, codefendant-respondent (No. 46,511).
Davidson, Meaux, Onebane & Donohoe, Richard C. Meaux, Lafayette, for applicant (No. 46,516).
Simon & Trice, Voorhies, Labbe, Fontenot, Leonard & McGlasson, by H. Lee Leonard, Lafayette, for respondents (No. 46,516).
White & May, Baton Rouge, Fred Gisevius, Jr., Herman Schroeder, Kierr & Gainsburgh, New Orleans, Gordon White, Baton Rouge, for amicus curiae.
Application of Defendant Denied, Application of Plaintiff not Considered December 20, 1963.
McCALEB, Justice.
This is a suit for damages arising out of a motor vehicle accident.
On September 11, 1960 at about 10:00 a. m., plaintiff, Mrs. Aline Gaspard, was a passenger in a Chevrolet automobile owned by her husband, Deussard Gaspard, which was being driven by her son, Wilman Gaspard, a 15-year-old minor, in a northerly direction in Vermilion Parish on Louisiana Highway 35, a black topped two-way road. The other passengers in the car were plaintiff's sister-in-law, Mrs. Eudon Gaspard, who was seated on the front seat with plaintiff and her son, and two of plaintiff's grandchildren who were occupying the rear seat. This group had been to church at Forked Island and were returning one of the grandchildren to the home of plaintiff's daughter which was north of Forked Island and on the west side of the road. There was a drizzling rain and plaintiff's son had been driving the car at a speed of approximately 45 miles per hour until he reached a point about 178 feet from the place in the road at which he intended to make a left turn into the premises of his sister. At this point (178 feet away), he retarded the speed of the car considerably by braking it and gave notice, by electric rear light signals, of his intention to make a left turn. At that time, a Lincoln automobile being driven by Bradley C. LeMaire, also travelling north at a speed of 55 miles per hour, was approaching the Gaspard car from the rear and, just as the driver of the Gaspard car was executing the left turn in and over the passing lane, the LeMaire car, which had almost overtaken it and was attempting to pass it, collided in said passing lane with the left side of the Gaspard car.
Plaintiff, having sustained personal injuries as a consequence of the accident, seeks recovery of damages from LeMaire and his insurance carrier, United States Casualty Company, and also North River Insurance Company, the insurer of her husband's car, alleging that the mishap resulted from the combined negligence of LeMaire and her son, in that each failed to keep a proper lookout and have his vehicle under control.
The case was tried by a jury which returned an in solido verdict against all defendants for $19,500.[1] The court thereafter, *151 finding that defendant North River Insurance Company's liability for bodily injuries was limited to $10,000 per person under the terms of its policy and that United States Casualty Company's limit of liability for bodily injuries under its policy was $5,000 per person, entered judgment on the verdict against all defendants in solido and correctly restricted the amount of solidary liability of North River Insurance Company to $10,000 and that of United States Casualty Company to $5,000. This judgment was appealed by all defendants to the Court of Appeal, Third Circuit. That court, while apparently approving the finding of the jury that both LeMaire and plaintiff's son were guilty of concurrent negligence having causal connection with the accident, concluded that plaintiff was, nevertheless, not entitled to recover from LeMaire and his insurer because the contributory negligence of plaintiff's son was to be imputed to plaintiff. Accordingly, the judgment of the district court was reversed as to these defendants and affirmed only insofar as it held North River Insurance Company for $10,000 conformably with the limit of liability expressed in its policy. See Gaspard v. LeMaire, La.App., 146 So.2d 467.
Plaintiff and North River Insurance Company then applied here for certiorari. Both applications were granted.
In this Court, whereas plaintiff is seeking merely a reinstatement of the judgment of the trial court, the two insurance companies and LeMaire have reurged all of the factual and legal contentions made in the courts below. North River Insurance Company contends, initially, that the courts below erred in holding that Wilman Gaspard was guilty of negligence in any respect and that the accident was caused solely through the fault of LeMaire.
On the other hand, LeMaire and United States Casualty Company argue that the sole cause of the accident was the negligence of Wilman Gaspard in making a sudden left turn across the path of the oncoming LeMaire vehicle which was overtaking the Gaspard car at the time the left turn was attempted.
After a careful examination of the evidence, we have no hesitancy in concluding that neither one of these contentions has any merit. The testimony of LeMaire exhibits that he did not exercise a proper lookout. He was returning the Lincoln automobile to Kaplan, where he had borrowed it from a relative following a Saturday night of carousing and admittedly was suffering from the effects of his intemperance. He did not even see the signal lights of the Gaspard vehicle giving notice of the driver's intention to execute a left turn and, when he was but 90 feet from the rear of that car, he swerved over into the passing lane without slackening his 55 mile per hour speed in an attempt to overtake it when he should have been aware that a left turn was to be executed.
While young Gaspard's evidence exhibits that his overall operation of his father's car was prudent, we nevertheless conclude that he was contributorily negligent for he faltered in his duty of lookout in one important respect. We have no doubt he had been driving carefully, that he slowed down and, observing the LeMaire car several hundred feet to the rear, gave a proper signal for a left turn at a time when, and under circumstances from which, a normal person would have concluded that it would have been safe to execute the maneuver. But, according to his candid admission, young Gaspard failed, after making preparation for the left turn, to look a second time before attempting to execute it. If he had done so, he would have immediately become apprised of the fact that the Le-Maire car was in the process of rapidly overtaking him; that it had moved over to the passing lane and that a left hand turn at that moment would unquestionably cause an accident. His failure to look the second time was a dereliction which had causal connection with the accident.
*152 Disposal of the factual issue as to the concurring negligence of the participants in the collision brings us, then, to the more important question of law which prompted this Court to grant writs of review herein that is, whether the negligence of Wilman Gaspard is imputable to his mother as a bar to her right of recovery from LeMaire and his insurer.
The Court of Appeal, in holding in the affirmative, based its decision on two theories. First it deduced that, under the prior jurisprudence of the Courts of Appeal, plaintiff must be charged with having at least "the theoretical right of control" over her son's operation of the car as the mission on which they were engaged was one for the mutual benefit of plaintiff, the driver and the other members of the family who had attended church and that, under these circumstances, the contributory negligence of the driver is imputed to plaintiff and bars her recovery.
Moreover, the court found that imputation of the son's negligence was proper in view of Article 217 of the Civil Code which provides that, as long as the child remains under the authority of his parents, he is bound to obey them "* * * in everything which is not contrary to good morals and the laws". From this codal article the court concluded that plaintiff had the right to control her son's driving and that she had even verified this right by testifying that, while she was in the car, she had control over her son's actions.
We do not believe that the conclusions of the Court of Appeal on this phase of the case are well founded. Imprimis, we hasten to observe that albeit Mrs. Gaspard did state under cross-examination that she believed that her son would have obeyed her if she had told him what to do or where to go and that she was "* * * the boss of the car * * *" while riding in it, these answers to suggestive questions may not properly be interpreted as meaning that she supervised or attempted to assume control of the mechanical operation of the car. We think it is more accurate to say that plaintiff intended to convey that her son was obedient and that he would comply with her desires as to the route to be taken and the places to go.
Article 217 of the Civil Code, which deals with parental authority, states the general duty of every child to obey his father and mother. It does not supply the answer to the question posed here which pertains essentially to the barring of a right of recovery of one free from personal negligence by imputing to such person the contributory negligence of another person because of their legal relationship. Under the topic "Negligence", Section 234 of 38 Am.Jur. states:
"The term `imputed negligence' refers to the rule which visits upon one person responsibility for the negligence of another." The text continues, in Section 235, thus:
"As a general rule, it may be said that in order to impute the negligence of one person to another, there must exist between them some relation of master or superior and servant or subordinate or other relation akin thereto. The relation between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relation between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person actually negligent. As the rule is stated by American Law Institute,[2] the relation between the plaintiff and the third person must be such as to make the plaintiff responsible at common law for the negligent conduct of such third person." (Emphasis ours).
We are in accord with the views expressed by the American Law Institute *153 Restatement and we hold that unless a plaintiff could be held responsible, as a matter of law, for the torts of the person whose negligence is sought to be charged to him the doctrine of imputed negligence cannot be applied. In Louisiana, where the common law does not obtain, a mother is not responsible for the damages occasioned by the negligence of her minor children residing at home while the father is alive. Under Article 2318 of the Civil Code that responsibility attaches only to the father.[3]
According to the evidence in the case at bar, Mr. Gaspard had given his son permission to drive the Chevrolet automobile. Hence, whether Wilman Gaspard was acting for himself or as agent of his father on a community mission, the father alone, apart from the contractual liability of North River Insurance Company, was responsible for his negligence in the operation of the automobile. If Mr. Gaspard himself had been driving and, through his negligence and that of a third person plaintiff had sustained injuries, his negligence would not have been imputable to her in her action against the other negligent third person. Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292 and other cases. Therefore, by a parity of reasoning, there is no basis for a conclusion that the negligence of the driver, assuming that he was acting as agent for plaintiff's husband, should be imputed as a matter of law to plaintiff just because he happened to be plaintiff's son.
Nor can we agree with the theory of the Court of Appeal that the negligence of the son must be imputed to the mother because the mother was vested with the theoretical right of control of the son's operation of the car. On the contrary, the negligence of one person cannot be imputed to another person not guilty of personal negligence in the absence of a legal obligation on the part of the latter to respond for the fault of the former. This principle is well stated by the California Court of Appeal in Roberts v. Craig, 124 Cal.App.2d 202, 268 P.2d 500, 43 A.L.R.2d 1146, as follows:
"* * * The fundamental rule is that one person, himself free from fault, shall not be required to bear the consequences of the actions of another. Vicarious liability is the exception. It is only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability. Right of control over the other person is a test of the required relationship, but it is not itself the justification for imposing liability. * * *"
The views expressed by the Court of Appeal, Third Circuit, in this case emanate from several court of appeal decisions which have never been specifically approved by this Court although certiorari has been denied in three of them.[4]
Those cases have generally involved suits by owners of automobiles who had received injuries in collisions attributable to the joint negligence of persons driving the owners' cars when the owners were passengers therein and the negligence of drivers of other cars with which the owners' cars collided. In those matters (see, for example, Rodriguez v. State Farm Mutual Insurance Co. (La.App.) 38 So.2d 432 and Service Fire Insurance Company v. Johnson & Bell (La.App.) 138 So.2d 410), the *154 appellate courts have held that the negligence of the driver of the owner's car is imputable to the owner and bars his recovery against a negligent third party as a matter of law because the owner has the "theoretical right of control" over the driver of his car, when the ride is for the owner's benefit or for the mutual benefit of himself and the driver.
We cannot subscribe to these holdings if they are intended, as seems to be the case, to impose a bar to recovery by the owner-passenger (or even a borrower-passenger, see Monroe v. Heard (La.App.) 168 So. 519) against a negligent third person by imputing to him the negligence of the driver of his car solely on the ground that he had a theoretical right of control over such driver. It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator. Therefore, in the absence of a relationship of principal and agent or other legal relationship for which responsibility is imposed on one of the parties for the fault of the other or of independent contributory negligence of the passenger, or a showing that the parties were engaged in a joint adventure, no cogent reason exists for denying to the injured passenger recovery against a third person who has been guilty of negligence having causal connection with the accident.
Most of the cases relied on by the Court of Appeal for its decision (and we do not think it is essential to cite them all or attempt to point out the different factual features which may distinguish some of them from the case at bar) are contrary to the rationale of White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338, wherein we resolved that a guest or passenger in an automobile has the right to place reliance upon the driver and is not required to monitor the operation or pay strict attention to the road, save under special circumstances or conditions from which it would be reasonable to conclude that common prudence dictated preventive measures by said passenger or guest.
Since we are of the opinion that all defendants are liable in solido for plaintiff's injuries, the only matter left for determination is the quantum of damages.
Plaintiff sued for $60,000, alleging that she had suffered general contusions and bruises extending over her entire body and severe and permanent injuries to her back consisting of a compression fracture of the first lumbar vertebrae, which injury produced a fibrotic condition and aggravated an osteoporosis of the lumbar and dorsal area. As aforesaid, plaintiff was awarded $19,500 by the jury and, in the Court of Appeal, defendants strenuously contended that the judgment was highly excessive and in unjustifiable variance with the quantum of damages given in other Court of Appeal decisions involving similar injuries.
The Court of Appeal concluded that the award of the jury was not manifestly excessive. In this Court, the defendants reurge their contention citing several Court of Appeal cases wherein considerably smaller judgments have been granted.
The record shows that, following the accident, Plaintiff was taken to the Kaplan Hospital where she was confined to bed for three and one-half weeks under treatment of Drs. Abshire and Sudduth. After three weeks, a brace was put on her back and within a few days thereafter plaintiff was able to go home. She testified that she stayed in bed at home for one or two weeks; that she was still wearing the brace whenever it was needed; that sedatives were prescribed for her pain and that, at the time of the trial (approximately one year after the accident), she was taking sedatives. Plaintiff further stated that she could do her housework only when standing up for, when she stooped down *155 to do work, she experienced pain in her back and that she was having difficulty sleeping at night.
Drs. Abshire and Sudduth testified, in substance, that plaintiff had sustained a 25-30% compression fracture of the first lumbar vertebrae as a result of the accident. This diagnosis was confirmed by Dr. Dunning, an orthopedic surgeon who examined plaintiff about four months later. He also noted that plaintiff (a woman 55 years of age) had generalized osteoporosis (decalcification of the bones), a condition which existed prior to the accident.
Drs. Sudduth, Abshire and Dunning also stated that fibrosis had resulted within the area of the fracture. This condition, which is described as a loss of resiliency in the muscle surrounding the fracture, is said to be permanent and the doctors believe that it is likely to be the cause of the pain of which plaintiff was complaining. Dr. Dunning indicates that the fibrosis which he found present was due to the wearing of the brace but he felt that, if plaintiff would have taken exercises he recommended, she would be relieved of her pain within a few months.
About 11 months after the accident, on `October 10, 1961, plaintiff was examined by Dr. Morin, an orthopedic surgeon, who testified for defendants. This physician compared the X-Rays that were taken immediately after the accident with those taken by him and reached the conclusion that the compression fracture resulted from the osteoporosis and not from the accident. However, we accord greater weight to the evidence of plaintiff's doctors and conclude that the compression fracture resulted from the accident and, even if it did not, it is fair to say that the osteoporosis condition was aggravated by the traumatic injury suffered in the accident.
There have been several cases of the Courts of Appeal involving the quantum allowable for back injuries similar to those suffered by plaintiff and the highest award we have been able to find for such injuries is one of $7500, which was approved by the First Circuit Court of Appeal in Merchant v. Montgomery Ward & Company, 83 So.2d 920 (1955). In that case, a 53 year old woman sustained a compression fracture of the eighth thoracic vertebrae and possible rupture of the fifth lumbar intervertebral disc. As a result, she suffered severe pain reaching from her lower back across her hip, was required to sleep on a hard board and could not lean over or reach to any great extent and for the alleviation of which condition an operation of a major nature had been recommended.
In Bouwell v. Marquette Casualty Company, 125 So.2d 168 (1960), the Court of Appeal, Fourth Circuit, approved a $4500 award to a man who sustained a fracture of the first vertebrae of the lumbar segment of the spine, was required to wear a brace, was confined to his bed for two weeks and was unable to return to work until approximately six months after the accident.
In Hargett v. Chemical Service, Inc., 116 So.2d 855 (1959) the Court of Appeal, First Circuit, awarded a man $4150 for multiple and extensive lacerations of the ears necessitating repair by plastic surgery, and also a compression fracture of the 11th thoracic vertebrae of the spine, resulting in disability for approximately 29 weeks during most of which time plaintiff was forced to wear a heavy and uncomfortable brace.
In Alvares v. Rush, 108 So.2d 797 (1959), the Court of Appeal, Second Circuit, awarded a railroad laborer $5,000 (plus stipulated amounts for loss of wages and hospital and medical care) for pain and suffering for injuries received in an accident consisting of 12 fractured ribs, a punctured lung, fracture of four lumbar vertebrae and fracture of the mandible in two places, who was hospitalized several times and contracted pneumonia and who could not work without use of a belt to support his body.
*156 And in Fulco v. Lumbermen's Mutual Casualty Company, 110 So.2d 871 (1959), the Court of Appeal, Second Circuit, citing many authorities, awarded a 50 year old housewife $4,000 when she sustained a compression fracture of the first lumbar vertebrae and was also suffering from osteoporosis. It was shown in this case that, as a result of her injuries, plaintiff had suffered a residual disability of from five to fifteen percent.
It is seen from the foregoing that the award of $19,500 in this case is far out of line with those given to the plaintiffs in the cited cases for similar injuries.[5] We, of course, realize that in fixing quantum of damages each case must necessarily depend upon its own particular facts. However, as pointed out by the Court of Appeal in Fulco v. Lumbermen's Mutual Casualty Company, supra, it is well recognized that a degree of uniformity of awards in court decisions "should be maintained so far as possible."
Considering that the awards in the cited cases for injuries of a similar nature have ranged between $4,000 and $7,500, we feel that a judgment in plaintiff's favor for the sum of $8,500 for the injuries she has sustained will fully compensate her for the consequences of the accident.
For the reasons assigned, the judgment of the Court of Appeal is reversed insofar as it rejected plaintiff's claim against Bradley C. LeMaire and his insurer, United States Casualty Company, and it is now ordered that the judgment of the district court be and it is amended so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff in the full sum of $8500.00, together with legal interest thereon from date of judicial demand until paid; that defendants, Bradley C. LeMaire and North River Insurance Company are condemned, individually and in solido, to pay unto plaintiff the full amount of this judgment; that United States Casualty Company is also condemned in solido with the other two defendants, but only to the extent of $5,000, together with interest at the rate of 5% per annum until $5,000 is paid and that each defendant is entitled to contribution from the other up to the amount for which each is held in solido, except that the United States Casualty Company is not entitled to contribution from its insured, Bradley C. LeMaire.
It is further ordered, adjudged and decreed that the fees of the expert witnesses are to be taxed as costs and fixed as follows: Dr. Gaulman Abshire, $35.00; Dr. Guy Dunning, $50.00; Dr. Perry Sudduth, $50.00; Dr. Norman Morin, $65.00.
It is further ordered, adjudged and decreed that defendants are to pay all costs of these proceedings.
As thus amended, the judgment of the district court is reinstated and affirmed. The costs incurred in the Court of Appeal and in this Court are to be paid by Bradley C. LeMaire and United States Casualty Company.
HAMITER, J., concurs with written reasons.
SUMMERS, J., concurs in part and dissents in part.
HAMITER, Justice (concurring).
According to the recorded testimony before us it might well be held that only Wilman Gaspard was guilty of negligence that proximately caused this unfortunate accident. His attempted left turn into a private driveway, at a time when a fast moving vehicle was approaching a short distance from *157 his rear, was an exceedingly dangerous maneuver and clearly violative of LRS 32:235. However, the jury and trial judge, who saw and heard the witnesses, found facts from which they concluded that the collision was caused by and resulted from concurrent negligence on the part of the two drivers; and I do not feel justified in contradicting that finding and conclusion, particularly since the writ was granted herein for the purpose of reviewing the Court of Appeal's ruling on the legal question of imputation of negligence.
In all other respects I fully agree with the views expressed in the majority opinion.
SUMMERS, Justice (dissenting).
I concur with the majority of the court in its conclusion that all defendants are liable in solido for plaintiff's injuries; it is the majority's determination of the quantum of damages which I find to be erroneous. Originally in this case the jury awarded $50,000.00 as damages to the plaintiff. This award was set aside when the trial judge granted a new trial. Thereafter the case was tried again and the award of $19,500.00, made by the jury in the new trial and affirmed and approved by the court of appeal, has been reduced by the majority opinion to $8,500.00; a reduction of more than half the second award. Faced as we are with the cold record in this case and knowing that twelve true men have twice sought to compensate this plaintiff for her injuries in a much larger amount, I cannot subscribe to the majority opinion. I understand the rule of law in such cases to be as follows: "[T]he findings of fact of a trial judge (or jury) will not be disturbed unless manifestly erroneous, and, when such error is manifest, it should be easy to point out." Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924).
The resort by the majority to a comparison of this case to others in fixing the award, I feel, brings about an improper result. Is this court to set up a schedule for compression fractures of the back like a workman's compensation schedule? In the absence of statutory regulation, and there is none in cases of this kind, each case must stand on its own merits, with much discretion allowed to the court below. Such a precedent as the majority establishes by this decision may prove to be as inhibiting as a statute in a field which should by its very nature be unrestrained, except by the sound discretion of the trier of fact. For the determination of pain in a back injury is truly a many-faceted, nebulous thing, difficult at best to resolve fairly when close to all of the persons and visible circumstances; doubly so when reliance is had upon the printed page alone.
I respectfully dissent.

On Application for Rehearing.
The application of Mrs. Aline Gaspard is granted. The application of Bradley C. LeMaire and of United States Casualty Co. is denied.
HAWTHORNE, J., is of the opinion that both applications should be granted.

On Rehearing.
HAWTHORNE, Justice.
The application for rehearing of plaintiff Mrs. Aline Gaspard was granted so that we could give further consideration to our decree reducing a jury award of $19,500.00 in her favor to $8500.00. The reduction was made on the ground that "a degree of uniformity of awards in court decisions `should be maintained so far as possible'".
In this court and in the Courts of Appeal there are numerous cases in which awards made by the judge or the jury for personal injuries have been reduced, or increased, *158 solely for the purpose of maintaining uniformity of awards in personal injury cases.[1] As we now view the matter, entirely too much emphasis has been given to the goal of uniformity of awards for similar injuries, the appellate courts' role in maintaining this uniformity has been extended too far, and adjudicated cases have been given too much weight in the appellate courts' determination of the adequacy or inadequacy of awards. When the doctrine is urged as applicable, cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration. The primary purpose of the judge or the jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case.
This overemphasis of uniformity of awards has resulted from the failure of the appellate courts to observe and follow the basic law as found in our Civil Code in their review of the amount of awards in personal injury cases. The writers of our Civil Code in setting out the measure of damages for breach of contract pointed out that "there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party", and that "In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury * * *". La.Civ.Code Art. 1934(3). (Italics ours.)
The primary question before the appellate court, then, is whether the judge or the jury in fixing the amount of the award has abused this great discretion vested in them by law. If for the purpose of uniformity the amount of the award is to be determined and fixed within certain limits a maximum and a minimum based on prior adjudicated cases, the discretion vested by the Code in the judge or the jury may be destroyed or at least stringently curtailed. In view of our codal provision, the appellate courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration.
Although cases from other jurisdictions are not controlling here, it is interesting to note how little value is placed upon the doctrine of uniformity by courts in other states in determining whether the award in a personal injury case is excessive. In recent cases these courts have said:
"* * * It is well established that verdicts rendered in other actions of a similar nature can be of but meager value in determining whether a verdict in a given case is excessive. * * *" Hubbard v. Long Island Railroad Co., 152 F.Supp. 1, 2 (D.C. N.Y.1957).
"* * * comparisons of other verdicts is of little value. Each case has to stand on its own facts. * * *" Hover v. Mac-Donald Engineering Co., 183 F.Supp. 427, 431 (D.C.Iowa 1960).
"We have said comparison of verdicts in different cases is not a satisfactory method of deciding whether a particular award is excessive. * * * Nevertheless such comparison of recent verdicts does have some limited value. * * *" Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 86 N.W.2d 822 (1957).
*159 "In considering damage awards, each case must depend upon its own facts, and precedents are of little value. * * *" Rauch v. American Radiator & Standard Sanitary Corporation, 252 Iowa 1, 104 N.W.2d 607, 615 (1960).
"* * * The question of amount of damages is primarily factual and is, therefore, not to be decided upon the basis of awards made in other cases. * * *" Stuart v. Matranga, 162 Cal.App.2d 469, 328 P.2d 233, 235 (1958).
"* * * A comparison of awards made in other cases is a most unsatisfactory method of determining a proper award in a particular case, not only because the degree of injury is rarely the same, but also because the dollar no longer has its prior value. * * * Turchi v. Shepherd, 230 Ark. 899, 327 S.W.2d 553, 556 (1959).
"* * * the size of a personal injury verdict cannot be justified solely by comparison with other verdicts nor be established by reference to definite standards." Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co., 244 Minn. 1, 68 N.W.2d 873, 889 (1955).
"* * * The adequacy and inadequacy of damages cannot be measured properly from adjudicated cases, nor can any general rule on the subject be laid down. * * *" Koch v. Stone, 332 S.W.2d 529, 532 (Ky. App.1960).
"* * * Each case must stand, more or less, upon its own facts and circumstances and a comparison with other cases and the amount of their verdicts are of little or no help." Missouri Pacific Railroad Co. v. Handley, 341 S.W.2d 203, 205 (Tex.Civ.App.1960).
"* * * A comparison with other cases is sometimes fraught with danger because, of course, each case is different and must of necessity be measured in the light of the circumstances peculiar to it. Nevertheless, it is recognized that reference to amounts awarded in similar cases has at least a limited value. * * *" Loftin v. Wilson, 67 So.2d 185, 189 (Fla.Sup.Ct.1953).
See also Annotation, Excessiveness of damages in action by person injured for personal injuries not resulting in death, 16 A.L.R.2d 3, 27; Catalano, Negligence Law: The Theory of Comparable Verdicts, 45 Am.Bar.Jour. 811 (1959); Zelermyer, Damages for pain and suffering, 6 Syracuse L.Rev. 27, 28.
Evidently the justice of this court who dissented from our original decree reducing the jury award to $8500.00 thought along the same lines as those other courts in regard to the value or weight to be given to awards for similar injuries in adjudicated cases. He said:
"The resort by the majority to a comparison of this case to others in fixing the award, I feel, brings about an improper result. Is this court to set up a schedule for compression fractures of the back like a workman's compensation schedule? In the absence of statutory regulation, and there is none in cases of this kind, each case must stand on its own merits, with much discretion allowed to the court below. Such a precedent as the majority establishes by this decision may prove to be as inhibiting as a statute in a field which should by its very nature be unrestrained, except by the sound discretion of the trier of fact. * * *"
In a case decided just this year by the Third Circuit Court of Appeal, White v. Robbins, La.App., 153 So.2d 165, that court took a realistic and proper view of the value and the weight to be given to the doctrine of uniformity of awards, saying:
"It is true that awards made should not be all out of proportion with previous awards made for somewhat similar injuries. * * *"
"However, in using the awards made in previous cases as a guide to evaluate the award of damages for the particular injuries involved in a subsequent case, the reviewing court must take into consideration *160 that each case is decided on the basis of its own peculiar factual circumstances, which may vary greatly from case to case even involving somewhat similar injuries. * * * Since an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and circumstances of each case, the trial court is entrusted with large discretion in making such awards, which discretion ordinarily should not be disturbed on appellate review. * * *
"Thus, on appellate review of a trial court award for pain and suffering, the question is not to calculate with any mathematical exactitude any fixed amount as alone proper under the circumstances, nor to attempt to reconcile widely variable and in fact irreconcilable past awards for injuries which in the abbreviated appellate discussion of them seem somewhat similar. The function of the reviewing court is simply to determine whether the present trial court award is manifestly excessive or manifestly insufficient under all the circumstances of the present case."
In the instant case the Court of Appeal found that the plaintiff sustained a very painful injury, that its effects were of a permanent nature, and that she would be subject to a certain amount of pain for the rest of her life. See La.App., 146 So.2d 467, 470. We are in full accord with the finding of the Court of Appeal, for plaintiff has established to our satisfaction the following facts: As a result of the accident she suffered a 30 per cent compression fracture of the first lumbar vertebra, which caused the vertebrae above and below to be brought closer to the fractured vertebra. The fracture together with the associated spasm indicating a tearing of ligament, muscles, and surrounding tissues. She remained in the hospital three and a half weeks, and while there suffered much pain. After leaving the hospital she wore a brace, and she could do what household tasks she was able to perform only while standing as she could not stoop without pain. It was difficult for her to sleep, and she was still taking sedatives at the time she gave her testimony approximately 13 months after the accident. She constantly complained to her husband of the pain she was suffering, and because of her limitation of motion he had spent $7000.00 or $8000.00 to prepare the home so she could do her work without bending. The injury which she suffered produced fibrosis in the injured tissues which would be permanent and permanently painful. Her motion would be limited for the rest of her life, and the alignment of her back was changed permanently with resulting permanent damage.
In view of these facts and circumstances we now conclude that there was no abuse of the discretion vested in the jury when it awarded to her $19,500.00 as damages, and that we erred in reducing that award. Moreover, from our consideration of the nature and extent of plaintiff's injury, and the pain and suffering resulting to her from it, the awards in cases involving similar injuries relied on by defendants to sustain their contention that the jury award in this case was excessive do not persuade us that the jury abused or exceeded its discretion here.
This rehearing was limited solely to the question of quantum, and in all other respects our original decree has become final. For the reasons assigned, that part of our original decree relating to quantum is amended so as to read as follows:
It is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff in the full sum of $19,500.00, together with legal interest thereon from date of judicial demand until paid; that defendants, Bradley C. LeMaire and North River Insurance Company, are condemned, individually and in solido, but only to the extent of $10,000.00 as to North River Insurance Company, together with interest at the rate of five per cent per annum until $10,000.00 is paid; that United States Casualty Company is also condemned in solido with the other two defendants, but only to the extent *161 of $5000.00, together with interest at the rate of 5 per cent per annum until $5000.00 is paid, and that each defendant is entitled to contribution from the others up to the amount for which each is held in solido, except that the United States Casualty Company is not entitled to contribution from its insured, Bradley C. LeMaire. The right to apply for a rehearing on the question of quantum is reserved to all defendants.
McCALEB, Justice (dissenting).
The majority opinion on rehearing admonishes the appellate courts of this State for placing "entirely too much emphasis" in maintaining a degree of uniformity of damage suit awards and concludes that so great a discretion is vested in the jury under Article 1934(3) of the Civil Code that the courts "* * * should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration".
The foregoing holding, it appears to me, constitutes somewhat of a paradoxfor, in one breath the Court states that the uniformity doctrine has been overemphasized and, in the next, it declares that prior jurisprudence should be considered in determining whether the jury has abused its discretion.
I have no quarrel with the latter observation. Indeed, as author of the original opinion, I submit that is exactly the way the uniformity doctrine was applied in the instant casethat is, to demonstrate that under the particular facts, including the medical testimony in this matter, the verdict of the jury was so far out of line with previous awards as to make manifest an abuse of discretion.
The original opinion did not say, as the majority view on rehearing indicates, that the prior decisions on quantum of damages controlled the amount to be given in this case. On the contrary, we stated, after declaring that the $19,500 award was far out of line with awards given in other cases for similar injuries, that "We, of course, realize that in fixing quantum of damages each case must necessarily depend on its own particular facts." Then, after reviewing all of the medical expert testimony as well as the statements of plaintiff as to the pain she suffered, we deduced that the jury's verdict of $19,500 was clearly excessive in view of the fact that awards in other cases for injuries of a similar nature had ranged between $4,000 and $7,500.
In our discretion, which we found at that time to be properly exercised (except for the dissent of one member of the Court), we allowed plaintiff $8,500 which was $1,000 more than had theretofore been given by the appellate courts for similar injuries.
The majority opinion on rehearing does not find that any of plaintiff's injuries were not considered on the original hearing. On the contrary, the basis for the change of opinion is a broad condemnation of the alleged overuse of prior awards in similar cases as guideposts for fixing quantum of damages, coupled with copious observations from common law and federal decisions to the effect that, since quantum of damages depends primarily on an evaluation of facts, precedents are of little value.
Indeed, if prior awards in cases involving similar injuries are of little value, how will the appellate courts of this State perform their constitutional obligation of review on facts as well as law? The majority perforce acknowledges that prior awards must necessarily be considered in determining whether the judge or jury has abused his or its discretion. But, after making this concession, the Court, apparently disregarding the prior jurisprudence, simply concludes that, because plaintiff has suffered pain and fibrosis in the injured tissues, the jury did not abuse its "large" discretion in giving her $19,500, or almost three times more than has heretofore been awarded for similar injuries. Under this reasoning, what set of facts and circumstances would be required for a verdict to be excessive? Must *162 it be 5 or 10 or 20 times more? Is there to be no precedent to which reference may be made in the determination of just compensation or shall the appellate courts hereafter merely nod their heads in abstract approval of speculative estimates of trial judges and juries? And should trial judges instruct themselves and their juries to give consideration to prior awards in similar cases in reaching their conclusions?
I respectfully dissent.
NOTES
[1] On first hearing another jury brought in a verdict in favor of plaintiff for $50,000. However, the judge set this verdict aside and granted a new trial.
[2] See American Law Institute Restatement, Torts, Vol. 1, Section 485.
[3] Article 2318 reads: "The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.

The same responsibility attaches to the tutors of minors."
[4] Waguespack v. Savarese, La.App., 13 So. 2d 726; Smith v. Howard Crumley & Co. Inc., La.App., 171 So. 188 and Rodriguez v. State Farm Mut. Ins. Co., La.App., 88 So.2d 432.
[5] See also Harris v. Varnado, La.App., 94 So.2d 74 (1957), $3,000 and Jackson v. Young, La.App., 99 So.2d 400 (1957), $4526.70, involving the same type of injuries.
[1] Some of these cases are "Williams v. W. R. Pickering Lbr. Co., 125 La. 1087, 52 So. 167 (1910); Warren v. Fidelity Mutual Insurance Co., 99 So.2d 382 (1st Cir. La.App.1957); Thomas v. Great American Indemnity Co., 83 So.2d 485 (2nd Cir. La.App.1955); Broussard v. Lormand, 138 So.2d 677 (3rd Cir. La.App. 1962); Cassreino v. Brown, 144 So.2d 608 (4th Cir. La.App.1962).