ANITA M. NOWAK *v.* KURT D. NOWAK ET AL.

SUPERIOR COURT          HARTFORD COUNTY          FILE NO. 179773

Memorandum filed August 1, 1973

*Groobert & Mahon,* of Manchester, for the plaintiff.

*Cooney, Scully & Dowling,* of Hartford, for the named defendant.

*Skelley & Walsh,* of Hartford, for the defendants Monarca.

RUBINOW, J. The complaint alleges that the plaintiff, Anita M. Nowak, was injured while a passenger in a motor vehicle operated by the defendant Kurt D. Nowak; that her injuries were the result of a collision between that motor vehicle and the motor vehicle of the defendants Monarca; and that that collision was the result of the negligence of Kurt and the defendants Monarca.

In a special defense dated January 12, 1973, Kurt made the following allegations: "At the time of the accident alleged in the complaint, this defendant was being instructed in the use and operation of said automobile by the plaintiff herein. At said time, the plaintiff was in control of said automobile which was owned by her. If this defendant was negligent in any of the ways alleged then the plaintiff is responsible therefor and said negligence is imputed to her as the owner and person in control of said automobile. As a result thereof, the plaintiff is barred from any recovery against this defendant."

In a special defense dated February 2, 1973, the defendants Monarca made the following allegations: "(1) At the time the alleged accident occurred, the Plaintiff Anita M. Nowak was instructing the Defendant Kurt D. Nowak in the use and operation of the car. (2) Paragraph 7 of the complaint [alleging that the collision between the Nowak and Monarca vehicles was due to the negligence of Kurt] is hereby incorporated and made Paragraph 2 of the By Way Of Special Defense. (3) According to Connecticut General Statutes Section 14-214, the Plaintiff Anita M. Nowak is responsible for the

operation of the car driven by the Defendant Kurt D. Nowak; and the negligence of the Defendant Kurt D. Nowak is imputed to her as the person responsible and the person in control of the car, barring her from any recovery against the Defendants, Salvatore Monarca, Josephine V. Monarca and Salvatore Monarca, Jr."

By pleadings dated May 17, 1973, Anita demurred to both of these special defenses. The briefs and the claims of the parties with respect to Anita's demurrer raise two principal issues: (1) Under the provisions of General Statutes §§ 14-36 (a) and 14-214, does the negligence of a learner bar an action by the instructor? (2) Does Kurt's special defense allege Anita's primary negligence?

I

General Statutes § 14-36 (a) defines the conditions under which an unlicensed learner may operate a motor vehicle. So far as here relevant, one of those conditions is that the learner be accompanied by an instructor, who must be a qualified licensed operator having "full control of the motor vehicle as provided by law." There is no provision in § 14-36 (a) to explain what is meant by "as provided by law." In § 14-214, however, there is a provision that the instructor "shall be so seated as to control the operation" of the motor vehicle and "shall be responsible for the operation thereof." The defendants claim that these statutory provisions mean that the instructor, at all times, is in actual control of, or has an unqualified right to control, the operation of the motor vehicle and that such actual control or unqualified right to control requires that the negligence of the learner be imputed to the instructor.

In construing similar learner statutes, the courts in other jurisdictions have held that, despite lan-

guage that seems to invest the instructor with "control" or "supervision" of the motor vehicle or the learner, the negligence of the learner is not to be imputed to the instructor. Thus, for example, in *Cullinan* v. *Kooharian,* 51 R.I. 250, 252, the statute provided that the instructor "shall be in such position in the vehicle being operated as to readily control at all times the operation of [the] motor vehicle." In setting aside a judgment for the plaintiff in an action against the instructor, who had applied the emergency brake in an effort to avoid a collision, the court said (pp. 252–54): "When a licensed operator, in the exercise of the privilege granted by the statute, permits an unlicensed person to drive an automobile under his direction he assumes the duty of exercising due care to prevent injury to persons and property by such unlicensed person. The duty arises by implication from the provisions of the statute and is independent of any other relation which may exist between the licensed operator and the unlicensed person. . . . [The instructor] must take such measures as the circumstances permit to prevent injury to the person or property of others which may result from the negligence or unskillful driving of an unlicensed person. In other words, he must exercise the control which the statute contemplates. . . . [T]he defendant [instructor] in our opinion did all that was required of a reasonably careful person under the emergency in which he found himself."

In *Sardo* v. *Herlihy,* 143 Misc. 397, 398 (N.Y.), the statute provided that the learner should be "at all times under the immediate supervision and control of a driver duly licensed." The court held that the negligence of the learner would not be imputed to the instructor, who was awarded a judgment against both the learner and a third party. In *Wolpert* v. *Garrett,* 278 App. Div. 893 (N.Y.), under

the same statute, the court approved the holding in *Sardo* v. *Herlihy* and set aside a verdict against an instructor because the trial court erroneously charged that the negligence of the learner should be imputed to the instructor.

In *Roberts* v. *Craig,* 124 Cal. App. 2d 202, 205, the statute required the learner to be "accompanied by, and under the immediate supervision of," the licensed operator. In holding that the statute did not permit imputing the negligence of the learner to the instructor, the court said (p. 207) that the reasoning in *Sardo* v. *Herlihy* "is most persuasive, and is in accord with the cases from other states that we have found interpreting such statutes. . . . We have found no case holding to the contrary." The court held (p. 208) that the instructor's right to control the operator of the vehicle is alone insufficient to justify imputing the negligence of the learner to the instructor in an action by the instructor against the learner: "Right of control over the other person is a test of the . . . relationship [required for imposing vicarious liability], but it is not itself the justification for imposing liability."

In *Forker* v. *Pomponio,* 60 N.J. Super. 278, 283, the statute provided for the issuing of a learner's permit to operate a motor vehicle "while in the company and under the supervision of a licensed motor vehicle driver." Interpreting this statute, the court said (pp. 283–84): "[T]he . . . statutory provisions . . . specify the substance of the duty necessarily undertaken by one who accompanies a permittee as the licensed driver and which is owed by him to the public—to supervise and control the permittee. In this regard he is to use reasonable judgment and care in exercising such supervision. . . . Hence the licensee's liability is not based upon the imputation to him of the negligence of the permittee. See, *contra, Kelley* v. *Thibodeau,* 120 Me.

402 . . . ; *Reetz* v. *Mansfield,* 119 Conn. 563 . . . .
[T]he liability of the licensee is predicated only on
his independent duty to supervise the permittee, and
the sole basis of his liability is negligent supervision
—not necessarily the negligent driving of the
learner *per se.* Thus, although a permittee may not
be negligent when the vehicle he is operating is
involved in an accident . . . , nevertheless the super-
vising licensee may be negligent, either because his
instructions were not reasonable under the circum-
stances or because he failed to take reasonable
measures to observe the danger and attempt to avert
it. . . . Conversely, the permittee may be negli-
gent and the licensee not, if, under the circum-
stances, the latter did 'all that was required of a
reasonably careful person.' "

Although the court in *Forker* v. *Pomponio,* supra,
cited *Reetz* v. *Mansfield,* 119 Conn. 563, as authority
for the proposition that the instructor's negligence
will be imputed, *Reetz* v. *Mansfield* did not enun-
ciate that proposition. This is apparent from the
*Reetz* court's statement (p. 567): "We do not know
whether this young lady was being instructed by the
defendant or not . . . ." The court in *Reetz* did
say, in dictum (p. 567), that an instructor may "in
fact" be in "actual control" of the car. Even this
dictum goes no further than to say that, under a
given set of facts, an instructor may be in "actual
control" of the vehicle. That dictum does not deal,
however, with the question whether the learner's
negligence will be imputed to the instructor when
the instructor is not "in fact" in "actual control" of
the vehicle.

*Kelley* v. *Thibodeau,* 120 Me. 402, also cited by
the court in *Forker* v. *Pomponio,* supra, as authority
for imputing the learner's negligence to the instruc-
tor, was decided on common-law principles, without
reference to any statutory provisions. The charge

that the court approved (p. 404) mentioned allowing the inexperienced and unlicensed operator to operate the vehicle and, also, the defendant's "full control" at all times, as elements of liability. Hence, it is not clear from the opinion that *Kelley* is a case of imputed negligence. In *Sweet* v. *Austin,* 158 Me. 90, 94, the Supreme Judicial Court of Maine classified *Kelley* as a case where "the owner of an automobile was held liable for permitting an inexperienced driver to drive his automobile in the owner's presence and under his control." This seems to be language of primary liability rather than of imputed liability. This interpretation of the case is confirmed by the rule that at common law there is no imputation of the negligence of the learner to his instructor. "At common law a licensed driver, accompanying a learner, would not be liable for the negligence of the learner." *Sardo* v. *Herlihy,* 143 Misc. 397, 400 (N.Y.) ; see *Roberts* v. *Craig,* 124 Cal. App. 2d 202, 207.

There are two reasons why, in the instant case, the court adopts the no-imputation interpretation that has been adopted in the other jurisdictions that have considered learner statutes. The first of these reasons is that an imputation interpretation would impose a civil disability upon an instructor who complies with the statute. In other words, an imputation interpretation reaches the result of penalizing someone because he complies with the statute. That interpretation ought to be avoided if any other interpretation may reasonably be made.

The second reason relates particularly to the narrow imputed-contributory-negligence issue in the current case. That reason is that the modern trend in the law is toward restricting the doctrine of imputed contributory negligence. More than eighty years ago, Mr. Justice Oliver Wendell Holmes wrote, in his famous essay, "Agency": "I assume

that common-sense is opposed to making one man pay for another man's wrong, unless he actually has brought the wrong to pass according to the ordinary canons of legal responsibility,—unless, that is to say, he has induced the immediate wrong-doer to do acts of which the wrong, or, at least, wrong, was the natural consequence under the circumstances known to the defendant." Holmes, Collected Legal Papers, p. 101 (1920). Although social and economic reasons have resulted in statutes[1] and decisions[2] that "make one man pay for another man's wrong," the reasons justifying those statutes and decisions are entirely absent when the issue is not one of "making one man pay for another man's wrong" but of barring one man from receiving damages for another man's wrong. "The only virtue in the doctrine of contributory negligence is that it prevents one tort-feasor from profiting by the wrong of another. In many cases the doctrine results in hardship. Some jurisdictions have abandoned or modified the doctrine in various degrees . . . . The last-clear-chance doctrine has been invented to blunt the edge of contributory negligence in a limited group of cases, and the wanton-and-reckless-conduct rule has further eroded the effect of contributory negligence in others. If contributory negligence is a doctrine of dubious virtue, then there is no good reason for inventing fictitious fault where there is no real negligence . . . ." *Johnson* v. *Los Angeles-Seattle Motor Express, Inc.*, 222 Ore. 377, 386.[3]

The American Law Institute has recognized the decline in judicial acceptance of the doctrine of imputed contributory negligence by drastically limiting, in Restatement (Second), 2 Torts, the

---

[1] E.g., workmen's compensation acts, automobile owner consent acts, automobile lessor liability acts, tenement house acts.

[2] E.g., master's liability for negligence of servant, common-law family-car liability, municipal liability for nuisance.

[3] In Connecticut, Public Acts 1973, No. 73-622, substituted comparative negligence for contributory negligence.

"both-ways" doctrine that was originally enunciated in § 485. Imputed contributory negligence does not have even the "virtue" of preventing "one tortfeasor from profiting by the wrong of another"; imputed contributory negligence prevents an innocent party from recovering from a wrongdoer. Instead of imputing to the General Assembly an intention to embrace a rule of law that is being repudiated by both the courts and the American Law Institute, the court prefers, in the instant case, to follow the course followed by courts in other jurisdictions and, therefore, finds in the "control" language of General Statutes §§ 14-36 (a) and 14-214 no legislative intention to create a new area for the application of the fiction of imputed contributory negligence.

The words "shall be responsible for the operation thereof," in § 14-214, do not affect the no-imputation interpretation. The statute those words appear in is clearly a criminal statute; compliance with its provisions is sought specifically by providing a criminal-law sanction for any instructor who disobeys it. The statute does not purport to concern itself with civil liability, in contrast to what is done, for example, in § 14-154a (renter of motor vehicle "shall be liable for any damage to any person or property" to same extent as operator) and § 31-293a (no action against fellow employee "except for negligence in the operation of a motor vehicle"). There is nothing in § 14-214 to suggest an intention to impose a civil penalty upon an instructor who complies with it. The primary purpose of the statute is to induce an instructor to comply with the standard of conduct set forth in the statute by providing criminal penalties for noncompliance.

The words "shall be responsible for the operation thereof," in § 14-214, are intended to accomplish a further purpose, i.e. to make the instructor crimi-

nally liable for any violations of the criminal law by the learner, and thus to induce the instructor to take whatever steps are necessary to have the learner comply with those laws, especially the motor vehicle laws. In this respect, those words have a purpose similar to that of § 14-107 (criminal liability of owner for violation of specified motor vehicle laws, even if owner is not operator). "The threat of vicarious liability for violations of the Motor Vehicle Law by his pupil should act to give the licensed driver who undertakes to instruct and supervise a beginner pause for sober reflection and full realization of his responsibilities." *State* v. *Gelman,* 65 N.J. Super. 600, 605 (statute making instructor "accountable for all violations of this subtitle committed by . . . [learner] while in the presence of the licensed driver" held to impose absolute vicarious criminal liability on instructor).

For the purpose of this opinion, it is not necessary to decide whether the vicarious criminal liability imposed on the instructor by the words "shall be responsible for the operation thereof," in § 14-214, imposes a criminal liability that is absolute (i.e. without regard to the instructor's conduct) such as was imposed in *State* v. *Gelman,* supra, 606, or is conditioned upon some action or nonaction by the instructor. It suffices for the purpose of the present opinion to find that the word "responsible" in the statute refers to penal liability and not to civil liability, just as the court in *Gelman* so found with reference to the word "accountable," and the court in *Sardo* v. *Herlihy,* 143 Misc. 397, 400 (N.Y.), found with reference to the word "liable."

## II

Kurt claims that his special defense sets forth a ground of primary negligence that requires Anita's demurrer to be overruled. If the court were to

ignore the third and fourth sentences of this one-paragraph pleading, there would be some basis for upholding Kurt's claim. The third and fourth sentences, however, seem to the court to spell out the essential intention of the pleader. "The burden . . . [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose they . . . [are] allowed to use their own language. Whenever that language fails to define clearly the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice between the parties." *Preleski* v. *Farganiasz,* 97 Conn. 345, 348. Here, paradoxically, a substantial injustice may be done to Kurt if his construction of the pleading is adopted at this stage of the pleadings, for the trial court or an appellate court might arrive at a different construction. In that event, Kurt might be foreclosed from making a claim of primary contributory negligence. On the other hand, if Kurt's construction is not adopted by the court at the demurrer stage, Kurt will have an opportunity to replead (Practice Book § 76; *Wooster* v. *Jerome,* 131 Conn. 266, 269) and to set forth with "reasonable certainty" such facts as he relies on to support a claim of primary negligence. This narrower construction of the pleading will not do an injustice to Anita, moreover, since the court will be adopting the narrower construction of the complaint that she has asked the court to adopt.

### III

The plaintiff's demurrer to the defendant Kurt's special defense dated January 12, 1973, is sustained, and the plaintiff's demurrer to the defendant Monarcas' special defense dated February 2, 1973, is sustained.