[Civ. No. 15737.   First Dist., Div. One.   Mar. 29, 1954.]

BURNETT J. ROBERTS et al., Respondents, v.
JOHN CRAIG et al., Appellants.

Tinning & DeLap and J. Vance Porlier for Appellants.

Louis J. McKannay, Carlson, Collins, Gordon & Bold and George R. Gordon for Respondents.

PETERS, P. J.—Plaintiff, Mrs. Roberts, was a licensed automobile driver. Defendant, Mrs. Craig, possessed a limited instruction permit under section 253 of the Vehicle Code which entitled her to drive only when accompanied by and under the supervision of a licensed driver. Mrs. Roberts accompanied Mrs. Craig on a trip. Mrs. Craig drove the automobile. She so negligently operated the car that an acci-

dent resulted and Mrs. Roberts was injured. In this action by Mrs. Roberts and her husband against Mrs. Craig and her husband the jury brought in a verdict in favor of the plaintiffs. Defendants appeal from the judgment entered on the verdict, their main contention being that Mrs. Roberts was guilty of contributory negligence because the negligence of Mrs. Craig, as a matter of law, was imputable to Mrs. Roberts.

The facts are not substantially in dispute. Both parties live near Concord, in Contra Costa County. They were on their way to Martinez when the accident happened. They had been friends for several years. Although there is some conflict in the testimony as to why they were going to Martinez, the evidence most favorable to respondents, which we must accept on this appeal, is to the effect that during a visit of respondent at the home of appellant on May 3, 1951, appellant stated that she wanted to make the trip to try and collect some salary checks of her sailor husband, and, because she had only a limited instruction permit, she did not want to go alone, but wanted a licensed operator to accompany her. She asked respondent if she would do so. Respondent had no personal reason to go to Martinez, but agreed to accompany appellant as an accommodation to her friend. Appellant admitted that before asking respondent she had asked two other friends to accompany her, but they had been unable to make the trip.

It was agreed that appellant would call for respondent the next morning. On the morning of May 4, 1951, respondent discovered, rather unexpectedly, that she could have the use of her own car that day because her husband did not need it. She decided to drive over to appellant's home and offer to take her to Martinez in respondent's car. On the way she met appellant who was driving over to pick up respondent pursuant to their prior agreement. Respondent offered the use of her car, but appellant stated that she felt fine, was not nervous, and wanted to drive her own car. Respondent's car was returned to its garage, and the two friends, in appellant's car and with appellant driving, proceeded on their trip.

The accident occurred at the intersection of Willow Pass Road, on which appellant and respondent were traveling, and the Arnold Industrial Highway. About three-quarters of a mile before reaching this intersection appellant said something about the car not acting right, and asked re-

spondent if she noticed anything "funny" about its performance. Respondent replied that she was not familiar with that car's operation, but that she did not notice anything wrong with its performance.

After this conversation, the two friends proceeded without incident to the intersection. Here appellant stopped for a stop sign. Appellant and respondent looked for approaching traffic in both directions on the Arnold Industrial Highway. Respondent told appellant, which was the fact, that the traffic was clear, and appellant started into the intersection. The car started jerking, whereupon appellant fed it more gas, and the car jerked forward. Thereupon, appellant apparently froze at the wheel and completely lost control of the car. Three times respondent told her to apply her brakes, but appellant failed to do so. The car turned sharply, jumped over two 6-to-8-inch curbs located along the edges of the dividing strip of the highway, traversed the other side of the highway, and went over an embankment and down a deep gully bordering the highway. Respondent received serious injuries, forming the basis of this action.

It is conceded that the evidence supports the finding that appellant was guilty of ordinary negligence proximately causing the accident. But, says appellant, under the provisions of section 253 of the Vehicle Code requiring a permittee to whom an instruction permit has been issued to be accompanied by and under the supervision of a licensed operator, all acts of negligence of the permittee in driving the car are imputable, as a matter of law, to the licensed driver riding with the permittee. If this were the proper interpretation of the section it would prevent recovery in the present action.

The section reads as follows: "Any person over the age of 14 years may apply to the department for an instruction permit. The department for good cause may issue to the applicant an instruction permit which shall entitle the applicant while having such permit in his immediate possession to drive a motor vehicle upon the highways for a period not exceeding six months *when accompanied by, and under the immediate supervision of, a licensed operator or chauffeur, . . .*" (Italics added.)

But little aid as to the meaning of the section is to be found in its legislative history. The original section relating to permits was section 59 of the California Vehicle Act.

(Stats. 1923, chap. 266, at p. 531.) A temporary permit of the general type of an instruction permit was first mentioned in the section as a result of a 1925 amendment to section 59. (Stats. 1925, chap. 239, at p. 394.) As then amended the section provided for the issuance of a temporary permit allowing the holder to drive a motor vehicle for a limited period "when accompanied by a licensed operator." In 1935 this section became codified as section 253 of the Vehicle Code (Stats. 1935, chap. 27, at p. 129), and, as first adopted in that year, contained the language last quoted. But later in the 1935 session (Stats. 1935, chap. 570, at p. 1665) the section was amended by changing the phrase "when accompanied by a licensed operator" to "when accompanied by, and under the immediate supervision of, a licensed operator." Although the section has been amended several times since 1935, the language here involved was not changed and appears in the section as presently effective.

No California cases have been found interpreting the portion of the section here involved. Appellant urges that since the "supervision" of the permittee has been placed in the licensee, each act of the permittee necessarily becomes the act of the licensee. Such interpretation would mean that the licensee is not only barred from any action against the permittee growing out of the operation of the car, including an action based on the willful misconduct of the permittee, but also that the licensee would become liable to third persons injured as a result of the negligence of the permittee, and perhaps would become criminally liable for penal violations of the permittee. The language used does not permit such an interpretation. It is worthy of note that when the Legislature intended to make a person jointly liable with the driver of a vehicle to third persons it had no difficulty in finding language to express that intent. Thus, section 402 of the Vehicle Code expressly makes the owner liable for the negligence of a person operating the car with his consent. Section 352 makes an adult signing a minor's application similarly liable. No such provisions are found in section 253. The significance of the absence of such language was commented on by the New York court in interpreting a similar statute in *Sardo* v. *Herlihy*, 143 Misc. 397 [256 N.Y.S. 690]. In that case, as in the instant one, the plaintiff was a licensed driver riding with an operator who had what, under New York law, was called a "learner's" permit. The car in which plaintiff was riding collided with that of defendant under

circumstances where the jury found that the holder of the learner's permit and the defendant were both guilty of negligence. It was urged, as it is in the instant case, that the negligence of the learner was imputable to the licensee rider, so as to make him guilty, as a matter of law, of contributory negligence. The applicable New York statute provided that: "The holder of a learner's permit shall not operate or drive a motor vehicle unless at all times under the immediate supervision and control of a driver duly licensed." Note that this language is almost identical with section 253 of our Vehicle Code. But the New York statute went beyond the language of the California section. After providing that it was unlawful for an unlicensed person to give instructions in driving to anyone, the statute provided that any licensee "when instructing another, shall be liable with him for any breach of this article or of the general highway traffic law, or of any local ordinance, rule or regulation."

In spite of the fact that the New York statute, unlike its California counterpart, makes the licensee criminally liable for the acts of the permittee the New York Supreme Court held that its statute did not result in the imputation of the negligence of the permittee to the licensee in a civil action. The court pointed out that the supervision and control granted the licensee is over the person of the permittee and is not over the vehicle being driven. ▇ That is equally true of the California statute, which certainly does not grant the licensee physical control over the permittee's vehicle. The New York court also pointed out that at common law there was no doctrine of imputation as a matter of law of the negligence of a student driver to his instructor, and held that when the New York Legislature intended to impute the negligence of a driver to another it did so by express statutory provisions similar to sections 402 and 352 of the California Vehicle Act. From this reasoning the court concluded that the New York statute while it "attempted to make the licensed driver liable penally for violations of the statute" it "had no effect upon his civil liability or rights, and should not be so construed." (P. 693.) This reasoning is most persuasive, and is in accord with the cases from other states that we have found interpreting such statutes. (*Van Sciver* v. *Abbott's Alderney Dairies*, 6 N.J.Misc. 949 [143 A. 153]; *Wolpert* v. *Garrett*, 278 App.Div. 893 [105 N.Y.S.2d 21]; see, also, *Vidal* v. *Town of Errol*, 86 N.H. 1 [162 A. 232].) We have found no case holding to the contrary.

Appellant argues, however, that the statute declares that the parties share control over the operation of the car, that this makes them joint adventurers, and, therefore, that the negligence of the permittee is imputable to the licensee. Similar arguments were found to be unsound in the cases above cited, and rightfully so. ▪ The negligence of one person is not imputed to another nonparticipant except in the clearest of cases and where the interests of justice demand it. The fundamental rule is that one person, himself free from fault, shall not be required to bear the consequences of the actions of another. Vicarious liability is the exception. ▪ It is only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability. ▪ Right of control over the other person is a test of the required relationship, but it is not itself the justification for imposing liability. ▪ Aside from such legal relationships as master and servant, principal and agent, etc., before the courts will find that the parties were joint adventurers there must be clear evidence of a community of interest in a common undertaking in which each participant has or exercises the right of equal or joint control and direction. (*Bryant* v. *Pacific Elec. Ry. Co.*, 174 Cal. 737 [164 P. 385] ; *Pope* v. *Halpern*, 193 Cal. 168 [223 P. 470].) ▪ A joint venture is a sort of mutual agency, akin to a limited partnership. (*Butler* v. *Union Trust Co.*, 178 Cal. 195 [172 P. 601] ; *Westcott* v. *Gilman*, 170 Cal. 562 [150 P. 777, Ann.Cas. 1916E 437] ; *Arnold* v. *Humphreys*, 138 Cal.App. 637 [33 P.2d 67].) ▪ It is not sufficient that the parties have certain plans in common, but the community of interest must be such that the passenger is entitled to be heard in the control of the vehicle. (*Pope* v. *Halpern*, 193 Cal. 168 [223 P. 470] ; *Campagna* v. *Market St. Ry. Co.*, 24 Cal.2d 304 [149 P.2d 281] ; *Miller* v. *Peters*, 37 Cal.2d 89 [230 P.2d 803] ; *Flores* v. *Brown*, 39 Cal.2d 622 [248 P.2d 922].) Most of the cases indicate that the common interest must be of some business nature. (20 Minn.L.Rev. 401, 404; 16 Cornell L.Q. 320.)

Of course, if the licensee actively and negligently assumed to interfere with the operation of the car, or failed to object to patent mismanagement of it, or failed otherwise to use reasonable care as an instructor, regardless of whether the parties were engaged in a joint enterprise, the jury could find the licensee negligent. But here it did not. Here the contention is that, as a matter of law, the parties were engaged

in a joint enterprise and that the negligence of one is imputed to the other. There is no basis for such conclusion.

Appellant claims to have found language contrary to these conclusions in *Walker* v. *Adamson,* 9 Cal.2d 287 [70 P.2d 914]. In that case the parties were engaged in a joint enterprise in the legal sense in that they were on a trip to Lake Tahoe on business of joint interest when the accident occurred. The plaintiff, a rider in the car, was injured as a result of the negligence of the defendant driver. In spite of the fact that the parties were joint adventurers on the trip, a verdict for the plaintiff, who was held to be a passenger and not a guest, was upheld. The reason given for holding that the negligence of the driver was not imputable to the passenger was because there was no evidence ''that the passenger had joint control of the operation of the vehicle.'' (P. 290.) Appellant here seizes upon this phrase and contends that here such control existed by virtue of the statute. There the parties were joint adventurers in fact, here they were not. If the parties are joint adventurers, the right to control becomes of legal significance. If they are not so engaged the mere right to control which is not exercised is not sufficient to create the vicarious liability.

There is another complete answer to this contention. Not only were the parties not in fact joint venturers, but even if they were, the negligence of appellant would not be imputed to respondent so as to bar her cause of action against appellant. ■ The doctrine of imputed negligence is indulged in to protect third persons from loss caused by the joint enterprise. ■ Liability is imposed on all members engaged in a joint enterprise when the action is brought by a third person because the courts have felt that in such a case fairness requires that the joint enterprise should bear the damages caused by the negligence of any member of the enterprise. But this basic cause for the imputation of the negligence of one to another does not exist when one member of the joint enterprise sues another. The better reasoned cases hold that the doctrine of imputed negligence will not be indulged in where the action is between members of the joint enterprise. Dean Prosser, in his well-reasoned text on Torts, states (p. 496): ''A few courts, entirely mistaking the nature of the vicarious liability in the joint enterprise cases, have held that the negligence of the driver is to be imputed to the passenger to bar recovery even when he brings his action against the negligent driver himself. There seems

to be no possible justification for such a result. It is well settled that the vicarious liability which is designed for the protection of third persons against the risks of the enterprise does not extend to any action between the parties themselves, and that a negligent servant will be liable to his master, or one member of a partnership to another. Most of the courts which have considered the question have recognized this. and have held that the driver's negligence, which is itself the cause of action, will not bar the passenger's recovery.''

This rule has been recognized in this state. In *Ledgerwood* v. *Ledgerwood*, 114 Cal.App. 538 [300 P. 144], a mother was riding in a car driven by her adult son. The car was the community property of the mother and her husband. The son negligently operated the car, resulting in injuries to the mother. A judgment in favor of the mother was affirmed. The court made the following two comments:

''Appellant seeks to charge respondent with imputed negligence upon the theory of joint enterprise and also upon the theory that respondent was the owner of the car and therefore theoretically had the right of control. We need not stop to consider the sufficiency of the evidence to show joint enterprise nor whether the respondent might properly be deemed the owner because of her community property interest in her husband's car. We may assume that respondent was the owner of the car and that the parties were engaged in a joint enterprise, but in our opinion the negligence of appellant may not be imputed to respondent and her right to recovery is not defeated in the absence of actual negligence on her part.'' (P. 541.)

After discussing the reasons for this rule, and citing many cases, the court stated (p. 543): ''In our opinion, where the injured party brings an action against the driver based upon the negligence of such driver, neither the fact that such injured party is the owner of the car, nor the fact that he is the employer or principal for whom the driver is acting, nor the fact that he is engaged in a joint enterprise with the driver, should defeat the action. It goes without saying that an owner, employer, principal or any other person who is personally present may be chargeable with contributory negligence in an action brought by such person against the driver, but in such cases it is actual negligence and not imputed negligence which bars the recovery.''

For these several reasons it is our opinion that the negligence of the permittee is not imputable as a matter of law

to the licensee, where the licensee sues the permittee either under the statute or under the facts, or both.

Appellant next contends that respondent, as a matter of law, was a guest and not a passenger and therefore cannot recover for the negligence of the driver. The trial court left this issue to the jury, and it has impliedly found that respondent was a passenger and not a guest. Under the evidence, this was a fact issue.

It is appellant's theory that this was a social and not a business trip, and that, under the rule announced in *Brandis* v. *Goldanski*, 117 Cal.App.2d 42 [255 P.2d 36], respondent is barred from recovery. There it was held that where the automobile trip is for pleasure of both parties, the mere exchange of social courtesies is not a benefit so as to amount to compensation that would make the rider a passenger and not a guest. Here, however, the jury, based on respondent's evidence, was justified in finding that the primary purpose of the trip was the business of the driver and that compensation was given by the rider. Appellant wanted to make the trip to Martinez to secure her husband's salary checks. Respondent had no business to transact in Martinez and had no reason, business or social, to go there. She was asked by appellant to go as an accommodations because the law prohibited appellant from driving without a licensed driver in the car. Thus, the implied finding that the primary purpose of the trip was the business of appellant is supported. The required "compensation" can be found in the furnishing of herself and her driver's license to appellant in order that appellant could comply with the law.

The problem here involved is very similar to the one involved in *Kruzie* v. *Sanders*, 23 Cal.2d 237 [143 P.2d 704]. In that case the driver asked her friend to drive to town with her in order to help the driver select certain Christmas presents. The friend had some knowledge not possessed by the driver of the desires of the proposed recipients and of the sizes of various articles of wearing apparel required to fit their needs. The rider thus invited had already done her shopping and had no other reason for making the trip. The trial court granted a nonsuit, which was reversed, the court holding that whether the rider was a passenger or a guest was a jury question. "In the present case the evidence that plaintiff took the trip at defendant's request in order to aid defendant with her Christmas shopping clearly shows a substantial benefit to defendant" (p. 241) so as to make the question one of fact for the jury. That is equally true in the instant case.

The last contention of appellant is that, as a matter of law, respondent assumed the risk of appellant's negligence. It is claimed that respondent knew that appellant was an inexperienced driver, knew that appellant had only an instruction permit, and knew generally the provisions of such permit. Appellant also points out that before starting on the trip respondent asked appellant how she felt and suggested that they should make the trip in her car. Some reliance is also placed on the evidence that shortly before the accident appellant asked respondent if she noticed that the car was not acting properly, it being contended that this should have indicated to respondent that the car was defective and that appellant was an inexperienced driver. The appellant does not mention the evidence to the effect that respondent knew that appellant had completed a full course in a driver's school and had taken some extra lessons to prepare herself for her driver's test, or that respondent knew that appellant was accustomed to driving about Concord, apparently without anyone else in the car, or that respondent had ridden with appellant on at least one previous occasion. It is not the law that a licensed operator riding with a person who possesses only an instruction permit, as a matter of law, assumes the risk of the driver's negligence. Whether there has been such assumption is a fact question. Here, under the evidence, the issue was properly left to the jury.

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.