[Civ. No. 20052. Fourth Dist., Div. Two. Dec. 16, 1980.]

CONSTANCE MARIE KOSTECKY, Plaintiff and Respondent, v. DAVID MATHEW HENRY et al, Defendants and Appellants.

COUNSEL

Kinkle, Rodiger & Spriggs, Joyce Manulis Reikes and Michael J. Frazelle for Defendants and Appellants.

Arthur J. Jaffee for Plaintiff and Respondent.

OPINION

TAMURA, J.—The main issue on this appeal involves the liability of a licensed driver who accompanies a person operating a motor vehicle under an instruction permit. Plaintiff, a minor, brought this action through his guardian ad litem to recover damages for injuries he sustained in an automobile accident involving a vehicle driven by his

mother and one driven by a 15-year-old minor with a learner's permit (defendant David Henry) who was accompanied by his father (defendant Robert Henry).

The accident occurred at the intersection of Grove and Fourth Streets in the City of Ontario. Plaintiff's mother, accompanied by her two children (plaintiff, then seven weeks old, and his sister) was southbound on Grove intending to continue south on Grove through the intersection. Defendant David Henry, accompanied by his father Robert Henry, was northbound on Grove intending to make a left turn onto Fourth Street. The traffic light for north-south traffic on Grove was green. There was no left turn signal from Grove to Fourth Street. As plaintiff's mother entered the intersection, defendant David Henry made a left turn into the path of the oncoming vehicle resulting in the collision. Plaintiff sustained brain damage and injury to his eyes as a result of the collision.

At the close of defendants' case, the court granted plaintiff's motion for a directed verdict against defendant David Henry on the issue of liability and instructed the jury accordingly.

The jury returned a verdict in favor of plaintiff and against defendants in the sum of $824,971.95. The jury made special findings that defendant Robert Henry failed to fulfill his duties under Vehicle Code section 12509[1] and that such failure was a proximate cause of the accident.[2] The jury also made a special finding that David Henry was not operating the vehicle as the agent of his father. Defendants appeal from the judgment on the jury verdict on the clerk's transcript and partial reporter's transcript.

Defendants advance the following contentions on appeal: (1) The liability of the father should have been limited to the $15,000 maximum

---

[1]Unless otherwise indicated, all section references in this opinion are to the Vehicle Code.

[2]The jury's special findings under section 12509 were as follows: "1. Did defendant Robert Henry as the 'accompanying licensed driver' referred to in CVC 12509 fulfill his statutory duties to assist his son David in controlling their vehicle as might have been necessary to avoid the collision with the Kostecky vehicle and to provide immediate guidance in the safe operation of their vehicle?

"Yes ___0___ No ___12___

"(Insert number voting Yes and No)

"2. If your answer is No, was such failure on the part of defendant Robert Henry to fulfill his statutory duty a proximate cause of the collision between his vehicle and the Kostecky Vehicle?

"Yes ___12___ No ___0___

"(Insert number voting Yes and No)"

liability under section 17709 of one who signs a minor's application for a driver's license; (2) the court erred in instructing the jury on the provisions of subdivision (c) of section 12509, as amended in 1976, relating to the operation of a motor vehicle by a person having a learner's permit and submitting special verdict forms based on that section; (3) the court erred in granting a motion for directed verdict against defendant David Henry on the issue of liability; (4) damages awarded were excessive; and (5) plaintiff's counsel was guilty of prejudicial misconduct.

For reasons explained below, we have concluded that the monetary limitation on liability under section 17709 of one who signs and verifies a minor's application for a license only pertains to his or her vicarious liability for the negligence of the minor and is not a limitation on the liability of a licensed driver for his or her negligent supervision of a driver with a learner's permit. Further, it is our opinion that while the court erred in instructing the jury on the provisions of subdivision (c) of section 12509 as amended in 1976 and in submitting special verdict forms based on the section as amended, the error did not result in a miscarriage of justice. We have also determined that defendant's remaining contentions lack merit and that the judgment should be affirmed.

I

We first address the contention that the father's liability should have been limited to that prescribed by section 17709 for one who signs and verifies a minor's application for a driver's license.

Section 17707 provides that a person who signs a minor's[3] application for a license is jointly and severally liable with the minor for damages proximately resulting from the minor's negligent operation of a motor vehicle, while section 17708[4] provides that a parent or guardian having

---

[3]Section 17707 provides: "Any civil liability of a minor arising out of his driving a motor vehicle upon a highway during his minority is hereby imposed upon the person who signed and verified the application of the minor for a license and the person shall be jointly and severally liable with the minor for any damages proximately resulting from the negligent or wrongful act or omission of the minor in driving a motor vehicle, except that an employer signing the application shall be subject to the provisions of this section only if an unrestricted driver's license has been issued to the minor pursuant to the employer's written authorization."

[4]Section 17708 provides: "Any civil liability of a minor, whether licensed or not under this code, arising out of his driving a motor vehicle upon a highway with the express or implied permission of the parents or the person or guardian having custody of the minor is hereby imposed upon the parents, person, or guardian and the parents,

custody of a minor and who grants the minor express or implied permission to drive a motor vehicle is liable, along with the minor, for damages proximately resulting from the negligent operation of the motor vehicle.

Section 17709 provides in pertinent part: "(a) No person,...shall incur liability for a minor's negligent or wrongful act or omission under Sections 17707 and 17708 in any amount exceeding fifteen thousand dollars ($15,000) for injury to or death of one person as a result of any one accident...."

It was stipulated that defendant father had signed and verified his son's application for a driver's license and that the son was driving with a learner's permit. Defendants maintain that by virtue of section 17709 the maximum liability of the father was $15,000. The contention lacks merit.

■ The ceiling on liability provided by section 17709 is only for the vicarious liability of one who signs or verifies a minor's application for a driver's license (§ 17707) or of a parent or guardian of a minor who drives an automobile with the expressed or implied permission of the parent or guardian (§ 17708). It is not a limitation on the liability of a licensed driver for his or her negligent supervision of an operator with a learner's permit. Under the common law, an owner of a vehicle or the signer of an application for a driver's license was not liable unless he himself was personally negligent or unless a relationship of principal and agent or master and servant existed. (See: Comment, *Torts: Liability of Parent Owning Automobile for Injuries Resulting from Negligent Driving by Minor Child* (1919) 7 Cal.L.Rev. 283.) Sections 17707, 17708 and 17709 were designed to create a limited vicarious liability for the minor's negligence. (*Rogers v. Foppiano* (1937) 23 Cal.App.2d 87, 93 [72 P.2d 239]; see *Southern Pac. Transportation Co. v. Dolan* (1972) 27 Cal.App.3d 534, 542 [104 Cal.Rptr. 131]; *Sawyer v. Zacavich* (1960) 178 Cal.App.2d 605, 609 [3 Cal.Rptr. 6].) Section 17709 by its terms specifically provides that the limitation of liability is "for a minor's negligent or wrongful act or omission." It has been held that an analogous limitation on an owner's vicarious liability under section 17151 is not a limitation on the owner's liability for his or her negligence. (*Caccamo v. Swanston* (1949) 94 Cal.App.2d 957, 967-968 [212 P.2d 246].) ■ In the case at bench, while the father's vicarious li-

person, or guardian shall be jointly and severally liable with the minor for any damages proximately resulting from the negligent or wrongful act or omission of the minor in driving a motor vehicle."

ability was limited by section 17709, that section was not a limitation on liability for his own negligence.

## II

■ We turn to defendant's contention that the court's instruction on the provisions of section 12509[5] and the requested special findings based on that instruction constituted prejudicial error.[6]

The instruction and special verdict forms were based on subdivision (c) of section 12509 as amended in 1976. (Stats. 1976, ch. 645, § 1, p. 1594.) The 1976 amendment, however, did not become effective until January 1, 1977. At the time of the accident (May 1976) subdivision (c) read: "Any person, while having in his immediate possession a valid [instruction permit]...may operate a motor vehicle...when accompanied by, and under the immediate supervision of, a California licensed driver...." (Stats. 1974, ch. 644, § 2, p. 1507.) The 1976 amendment added the following sentence to subdivision (c): "Except as provided in subdivision (d), such an accompanying licensed driver at all times shall occupy a position within the driver's compartment that would enable such accompanying licensed driver to assist the driver in controlling the vehicle as may be necessary to avoid a collision and to provide immediate guidance in the safe operation of such vehicle." It was thus error to

---

[5]The instruction pertaining to section 12509 was as follows:
"SPECIAL INSTRUCTION #3
"Vehicle Code Section 12509 provides that [a]ny person, while having in his immediate possession a valid permit issued pursuant to subdivision (a), may operate a motor vehicle, other than a motorcycle or a motorized bicycle, when either taking the driving training instructions of a kind referred to in Section 12507, or when practicing such instruction, and when accompanied by, and under the immediate supervision of, a California licensed driver 18 years of age or over whose driving privilege is not on probation. Except as provided in subdivision (d), such an accompanying licensed driver at all times shall occupy a position within the driver's compartment that would enable such accompanying licensed driver to assist the driver in controlling the vehicle as may be necessary to avoid a collision and to provide immediate guidance in the safe operation of such vehicle." (Italics omitted.)

[6]"INSTRUCTION NO. 26
"In connection with the last instruction just read to you, you are instructed to make a special finding on the following questions upon a form which will be given to you:
"Questions:
"1. Did defendant Robert Henry as the 'accompanying licensed driver' referred to in CVC 12509 fulfill his statutory duties to assist his son David in controlling their vehicle as might have been necessary to avoid the collision with the Kostecky vehicle and to provide immediate guidance in the safe operation of their vehicle?
"2. If your answer is yes, was such failure on the part of defendant Robert Henry to fulfill his statutory duty a proximate cause of the collision between his vehicle and the Kostecky vehicle?"

instruct on subdivision (c) as amended in 1976 and to submit special verdict forms based on that instruction. The critical question is whether the error resulted in a miscarriage of justice.

In making our assessment on the issue of prejudice, we begin with a brief review of the legislative history of what is now subdivision (c) of section 12509.

Before 1935, former California Vehicle Act section 59 pertaining to instruction permits merely provided that permittees might drive a motor vehicle on a public highway "when accompanied by a licensed operator...." (Stats. 1925, ch. 239, p. 394.) We find no cases arising under the statute involving the duty of the accompanying licensed driver. Decisions in this and other jurisdictions, however, have long held that a licensed driver teaching another to drive must exercise reasonable care in supervising and advising the student. (*Riley* v. *Berkeley Motors Inc.* (1934) 1 Cal.App.2d 217 [36 P.2d 398]; *Di Vita* v. *Martinelli* (1932) 123 Cal.App. 392 [11 P.2d 423]; see Annot., *Automobiles— Teaching Driver* (1966) 5 A.L.R.3d 271, 278-283.) In 1935, section 59 was codified as section 253 of the Vehicle Code and in the same year that section was amended to read as the statute read at the time of the instant accident by changing the phrase "when accompanied by a licensed operator" to "when accompanied by, *and under the immediate supervision of,* a licensed operator...." (Italics added; Stats. 1935, ch. 570, p. 1665.)

The 1935 amendment did not spell out the duties of the licensed driver or elaborate on the meaning of the term "immediate supervision." There was a paucity of cases arising under the amended statute. One case held that the standard governing the conduct of the licensed driver was the common law duty of due care; that is, what a reasonably prudent instructor would have done under the same or similar circumstances. (*Roberts* v. *Craig* (1954) 124 Cal.App.2d 202, 208 [268 P.2d 500, 43 A.L.R.2d 1146].) Another case, *Reclusado* v. *Mangum* (1964) 228 Cal.App.2d 8, 14-15 [39 Cal.Rptr. 157], commented on the absence of specific statutory guidelines concerning the meaning of the term "immediate supervision" stating: "When is a person under the immediate supervision of a licensed driver? Does the person who is over 18 years of age and who is supposedly giving immediate supervision have to sit in the front seat with the driver? Does he have to make the same observations of the road and of other traffic that a driver is supposed to do? Is he supposed to instruct the driver frequently and to

what extent? There are no explicit statutory guidelines specifically indicated. We believe, however, that it was the intention of the Legislature to leave the question to a jury whether there was anyone 18 years of age or over who was in fact giving immediate supervision to the driving of the car. Each of the words 'immediate' and 'supervision' has a well-known meaning in the English language; it is for a jury to determine in a given case whether there was compliance with the provisions of the instruction permit which required that there should be someone in the car 18 years of age or over, who was himself or herself the possessor of a license and who would give immediate supervision to the actions and omissions of the operator. It is to be presumed that the jury so acted in this case."

The 1976 amendment to subdivision (c) of section 12509 was apparently an attempt to clarify the meaning of the term "immediate supervision." It expressly requires the licensed driver to occupy a position "within the driver's compartment." Thus, if the licensed driver were in the back seat when a collision occurred, he or she would be in violation of the statute and could be negligent per se. However, other than requiring the licensed driver to occupy the "driver's compartment," the 1976 amendment does not contain a specification of the duties of the licensed driver. It does not mandate the assumption of physical control of a vehicle to avoid a collision nor does it specify the kind of guidance or advice that must be given for the safe operation of the vehicle. ■ The amendment, wisely we believe, still leaves the extent and nature of the supervision and guidance to be provided in a given situation to the common law standard of due care, namely, what a reasonably prudent licensed driver having supervision over a learner's operation of a vehicle would have done under the same or similar circumstances.

■ With the foregoing history of the applicable statute in mind, we return to the claim of prejudice resulting from the rendition of the instruction and the verdict forms. We start with certain basic principles by which we are governed in the resolution of this issue. A judgment may not be set aside on the ground the jury was misdirected unless a reviewing court, after an examination of the entire cause, including the evidence, shall be of the opinion that the error has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13;[7] *Cucinella* v. *Western*

[7]California Constitution, article VI, section 13 provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

*Biscuit Co.* (1954) 42 Cal.2d 71, 82 [265 P.2d 513]; *Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 168-169 [231 P.2d 484]; *Vaughn* v. *Jonas* (1948) 31 Cal.2d 586, 600-601 [191 P.2d 432].) ▋ Prejudice from an erroneous instruction is never presumed; it must be affirmatively demonstrated by the appellant. (*Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853-854 [139 Cal.Rptr. 888, 93 A.L.R.3d 537]; *Kadelbach* v. *Amaral* (1973) 31 Cal.App.3d 814, 819 [107 Cal.Rptr. 720].) Whether a jury has been misled by an erroneous instruction depends upon all of the circumstances of the particular case. (*Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443, 450 [2 Cal.Rptr. 146, 348 P.2d 696]; *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500].) Consistent with the fundamental rule of appellate procedure that the appellant must make an affirmative showing of error by an adequate record (*In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65]; *Calhoun* v. *Hildebrandt* (1964) 230 Cal. App.2d 70, 72 [40 Cal.Rptr. 690]), it is incumbent upon the appellant to demonstrate that the error was prejudicial under the particular facts in evidence by bringing before the reviewing court a sufficient record showing that absent the error, there was a reasonable probability of a finding in appellant's favor (*Hamlin* v. *Pacific Electric Ry. Co.* (1907) 150 Cal. 776, 782-783 [89 P. 1109]; *Skoglie* v. *Crumley* (1972) 26 Cal.App.3d 294, 299 [103 Cal.Rptr. 205]; *Stephens* v. *Aviation Research etc. Corp.* (1966) 243 Cal.App.2d 349, 351-352 [52 Cal.Rptr. 322]; *Vance* v. *De Long* (1961) 191 Cal.App.2d 689, 691-692 [13 Cal. Rptr. 65]).

Though there is no precise formula for measuring the effect of an erroneous instruction, the following factors should be considered: "(1) [T]he degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].)

▋ Applying the foregoing principles to the instant case, defendants have failed to discharge their burden of demonstrating that the instruction and special verdict forms in question resulted in a miscarriage of justice. As we have seen, other than the explicit requirement that the licensed driver occupy the front seat, his duty under the version

of subdivision (c) of section 12509 as amended in 1976 on which the jury was instructed continued to be that imposed by the common law standard of due care. Since the evidence was uncontradicted that the father was seated in the front seat when the collision occurred, the instruction could not have been prejudicial. The instruction and verdict forms were not inconsistent with the interpretation that the duty of the licensed driver was to exercise reasonable care in the supervision and guidance of the operator. This was the interpretation presented by plaintiff's counsel in his argument to the jury. He told the jury that the court would render an instruction and request a special finding on the issue of the father's negligence in assisting his son in the operation of the vehicle and argued that the father was negligent in failing to observe the oncoming Kostecky vehicle in time to warn his son not to turn in front of it. Counsel made no suggestion that the father should have assumed physical control of the vehicle to avoid the accident.

An instruction should be interpreted in a manner that will support rather than defeat a judgment if it is reasonably susceptible to such interpretation. (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 14 [130 Cal.Rptr. 416]; *Learner* v. *Glickfeld* (1960) 187 Cal.App.2d 514, 523 [9 Cal.Rptr. 686]; *Rupp* v. *Summerfield* (1958) 161 Cal.App.2d 657, 667 [326 P.2d 912].) Here, the instruction and verdict forms, when read in conjunction with the court's instructions on the definition of negligence and due care and plaintiff's counsel's explanation to the jury of the issue to be decided under the instruction and special verdicts, could reasonably be interpreted to mean that the father's duty was to exercise reasonable care in the supervision and guidance of his son in the operation of the vehicle and that the jury was to find whether or not he negligently failed to discharge that responsibility. Since this was the standard of care required of a licensed driver under the statute as it existed at the time of the accident, defendants could not have been harmed. We note further that the jury verdicts on the special findings were unanimous.

Furthermore, defendants have failed to demonstrate through the limited record on which they have prosecuted this appeal that there was a reasonable probability of a finding in their favor had the court's instruction and verdict forms been based on the statute as it existed at the time of the accident. Defendants designated only a partial reporter's transcript consisting of plaintiff's cross-examination of defendants' medical expert, the testimony of defendants' accident reconstruction ex-

pert, instructions to the jury and plaintiff's counsel opening argument to the jury. An examination of this limited record fails to show that a miscarriage of justice resulted from the instruction and verdict forms. Indeed, the partial reporter's transcript designated by plaintiff contains overwhelming evidence that defendant father was negligent in failing to observe the oncoming Kostecky vehicle in time to warn his son.[8] He testified that he did not see the Kostecky car until it was a car length away and that only a split second elapsed between his warning to his son and the impact. Where the record is clear on a factual issue, an erroneous instruction on that issue is nonprejudicial. (*Rupp* v. *Summerfield, supra,* 161 Cal.App.2d 657, 664-666.)

From an examination of the entire cause, including the evidence before us, we are of the opinion that the court's instruction and special verdict forms based on subdivision (c) of section 12509 as amended in 1976, though erroneous, did not result in a miscarriage of justice.

### III

Defendant's remaining contentions are: (1) The court erred in directing a verdict against defendant son; (2) damages were excessive; and (3) plaintiff's counsel was guilty of prejudicial misconduct.

#### (1) *The Directed Verdict*

■ At the close of defendant's case, the court granted plaintiff's motion for a directed verdict on the issue of defendant David Henry's liability. On the limited record before us, defendants' attack upon the court's order must fail.

The rules governing the granting of a motion for directed verdict in favor of plaintiff have been expressed by our high court as follows: "The trial court, in a proper case, may direct a verdict in favor of a party upon whom rests the burden of proof, in this case the plaintiff. Substantially the same rules apply to directed verdict in favor of plaintiffs as apply to such verdicts in favor of defendants. [Citations.] A directed verdict may be granted, when, disregarding conflicting evidence, and in-

---

[8]The partial reporter's transcript brought up by plaintiff includes plaintiff's examination of both defendants and the direct examination of Mrs. Kostecky, witness Busby and Officer Fryer of the Ontario Police Department.

dulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered. [Citations.] In passing on the the propriety of the trial court's action in directing a verdict, *the doctrine of scintilla of evidence has been rejected in this state.* [Citation.] ■ A motion for a directed verdict may be granted upon the motion of the plaintiff, where, upon the whole evidence, the cause of action alleged in the complaint is supported, and no substantial support is given to the defense alleged by the defendant. [Citations.]" (*Walters v. Bank of America etc. Assn.* (1937) 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259], italics supplied; *Newing v. Cheatham* (1975) 15 Cal.3d 351, 366 [124 Cal.Rptr. 193, 540 P.2d 33]; *Beck v. Kessler* (1965) 235 Cal.App.2d 331, 335 [45 Cal. Rptr. 237].)

■ On the issue of liability, the only portion of the record designated by defendants was the testimony of their accident reconstruction expert. Defendants contend that the expert's testimony constituted evidence of sufficient substantiality to have supported a verdict for defendant David Henry on the issue of proximate cause. They rely primarily on the expert's testimony that at some point a street sign mounted on a post located on the traffic island that separated the northbound and southbound lanes on Grove obstructed defendant David Henry's view of the oncoming Kostecky vehicle. They also refer to the expert's testimony concerning the unusual width of the intersection and the lack of a left turn signal.

Defendants' contention lacks merit. The street sign was posted some distance south of the intersection. The expert admitted that as soon as a driver came abreast of the sign he would have an unobstructed northerly view up Grove Street for a quarter of a mile and that the sign would block a driver's view for only a fraction of a second unless the vehicle stopped at the point where vision was obstructed. Defendants testified that the traffic light on Grove was green and that they proceeded into the intersection without stopping. Furthermore, neither defendant testified that the sign blocked his view northward up Grove Avenue. The testimony of defendants' reconstruction expert was not of sufficient substantiality to support a finding that the condition of the intersection was the proximate cause of the accident and that defendants' negligence was not a proximate cause.

## (2) *Damages*

■ Defendants' contention that the damages awarded were unsupported by the evidence must be rejected. Defendants have failed to provide a record to support their argument. An appellant who contends that the evidence does not support a finding on a particular issue of fact must set forth in his brief all of the evidence bearing on that issue and not merely evidence favorable to him; failure to so state the evidence may be deemed a waiver of the claimed error. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 152 [135 Cal.Rptr 802].) Not only have defendants failed to heed the foregoing rule, they have even failed to provide a record of the evidence adduced on the issue of damages.

## (3) *Misconduct of Counsel*

■ Finally, defendants contend that plaintiff's counsel was guilty of prejudicial misconduct in his cross-examination of defendant's medical expert. During cross-examination, plaintiff's counsel asked the doctor whether he examined patients on behalf of the defense in workers' compensation cases. The witness answered, "I don't know," whereupon counsel stated, "I think I do, doctor, that's why I asked the question." Defendants' counsel objected and asked the court to cite plaintiff's counsel for misconduct. The judge did and admonished the jury to disregard counsel's comment. Surely the alleged misconduct was not of such gravity that it could not be remedied by the admonition.

Defendants further note that in response to defendants' motion for mistrial outside the presence of the jury, plaintiff's counsel stated he knew of another doctor named Dr. Joseph who had been a defense witness in workers' compensation cases and that this was the reason for the statement for which he was cited, and that he promised to apologize to the jury for his improper statement. They argue that plaintiff's counsel's subsequent apology to the jury simply added to the confusion instead of clarifying the matter. The record fails to show any objection by defendants to plaintiff's counsel's "apology" to the jury. A party is foreclosed from complaining on appeal of misconduct during argument to the jury where his counsel sat back silently during arguments allowing the alleged improprieties to accumulate without objection. (*Horn* v. *Atchison, T. & S. F. Ry. Co.* (1964) 61 Cal.2d 602, 610-611 [39 Cal.

Rptr. 721, 394 P.2d 561]; *Brokopp* v. *Ford Motor Co.*, *supra*, 71 Cal. App.3d 841, 860.)

DISPOSITION

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied January 9, 1981.