993 P.2d 456

**Warren BOOMER and Julie Boomer, husband and wife; Michael Boomer, Christina Boomer and Amanda Boomer, minor children by Warren Boomer and Julie Boomer, their parents and natural guardians, Plaintiffs–Appellants,**

v.

**Curtis Mario FRANK, a minor, Defendant–Appellee.**

**No. 1 CA–CV 98–0294.**

Court of Appeals of Arizona, Division 1, Department A.

March 18, 1999.

Review Dismissed Aug. 25, 1999.

Office of Robert H. Allen, P.C. by Robert H. Allen, Phoenix, Attorneys for Plaintiffs–Appellants.

Burch & Cracchiolo, P.A. by Daniel R. Malinski, Phoenix, Attorneys for Defendant–Appellee.

### OPINION

LANKFORD, Judge.

¶ 1    The principal issue presented by this appeal is whether a licensed driver accompanying a driver with only a learner's permit has a duty to exercise reasonable care.  The trial court decided that he does not, and entered summary judgment for the licensed driver, defendant Curtis Frank.  We hold that as a matter of law, the licensed driver has a duty.  *See generally Markowitz v.*

*Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985) (whether a duty exists is a question of law).

¶2  The plaintiffs are the Boomer family. They were injured when their Toyota sport utility vehicle was struck by a Porsche driven by Frank's friend, Renee Rapisarda. She was driving with a learner's permit at the time, while Frank rode in the front seat. The presence of a licensed passenger is required by statute.[1] The Boomers claim that Frank may be held liable in tort for their injuries under either an imputed negligence theory or for his negligent supervision of Rapisarda.

¶3  The details of the accident are as follows. The collision occurred on the evening of February 17, 1996, at the intersection of Shea Boulevard and 85th Place in Scottsdale, Arizona. The Boomer family was traveling eastbound in the innermost lane of Shea Boulevard. Rapisarda was driving south on 85th Place. She turned left to proceed east on Shea Boulevard, colliding with the Boomers' vehicle, apparently in the eastbound lane of Shea Boulevard closest to the median. The turn required crossing three lanes of westbound traffic in addition to a center median. Rapisarda's progress was controlled by a stop sign for southbound traffic on 85th Place at its intersection with Shea Boulevard.

¶4  Rapisarda was fifteen years old at the time, operating the vehicle with a learner's permit. Frank, who was riding in the front seat, was sixteen years old and had a driver's license. Three other passengers rode in the back seat of the Porsche.

¶5  There is some dispute about Rapisarda's speed and about whether she stopped at a stop sign prior to entering the intersection. Both Rapisarda and Frank deny that Rapisarda was speeding or failed to stop.[2] However, several witnesses to the accident stated that they had observed Rapisarda speeding through the intersection prior to the accident. Although some witnesses said that, given her speed, Rapisarda must not have stopped, none actually observed whether she had stopped.

¶6  Frank moved for summary judgment. The Boomers submitted several witness statements in response to Frank's motion for summary judgment. Frank contested the admissibility of the witness statements in his reply. The record does not reveal whether the trial judge considered the contested documents.[3] The trial court granted Frank's motion for summary judgment, determining that there was "no duty and no evidence of violation of duty." The court certified its judgment as final under Arizona Rules of Civil Procedure 54(b). We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

1.  Arizona Revised Statutes Annotated ("A.R.S.") section 28–415(A) (1996) provides:

Any person who is at least fifteen years and seven months of age may apply to the department for an instruction permit for a class D license. The department may in its discretion, after the applicant has successfully passed all parts of the examination other than the driving test, issue to the applicant an instruction permit which shall entitle the applicant, while having the permit in his immediate possession, to drive a motor vehicle requiring a class D license upon the public highways for a period of twelve months *when accompanied by a person who possesses the same class or higher class of license and who is occupying a seat beside the driver.*

(Emphasis added.)

A.R.S. section 28–415(A)(1996) was renumbered A.R.S. section 28–3154, effective October 1, 1997. Section 28–3154 includes some minor changes to the former statute. The pertinent portion of the new statute reads:

B.  The instruction permit entitles the permittee to drive a motor vehicle requiring a class D license on the public highways for twelve months when both of the following conditions are met:

1.  The permittee has the permit in the permittee's immediate possession.

2.  The permittee is accompanied by a person who has a class A, B, C, or D license and who occupies a seat beside the permittee.

2.  In her answer to Boomers' complaint, Rapisarda admitted negligence but denied recklessness. She also denied speeding or failing to stop. Frank claims that he observed Rapisarda stop at the stop sign, look both ways, and proceed slowly through the intersection.

3.  The trial court apparently gave reasons for its summary judgment ruling "on the record." According to a minute entry, a court reporter was present for the oral arguments on the motion. However, the transcript was not included with the record on appeal.

¶ 7   The issues presented on appeal are: (1) Can Frank be held liable in tort under either an imputed negligence theory or a negligent supervision theory?  (2) If so, was the evidence sufficient to create a genuine issue of material fact?   We conclude that Frank, as the licensed passenger, had a duty to supervise Rapisarda, the permittee driver, and that there is sufficient evidence from which a jury could find that Frank violated that duty.

¶ 8   Our review of summary judgment is *de novo*.  We decide anew whether genuine issues of material fact exist and whether a party is entitled to judgment as a matter of law.  *See Floyd v. Donahue*, 186 Ariz. 409, 411, 923 P.2d 875, 877 (App.1996).  The evidence and all reasonable inferences are drawn in the non-movant's favor.  *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309–10, 802 P.2d 1000, 1008–09 (1990).  "Mere speculation or insubstantial doubt as to the facts will not suffice, but where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper."  *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

¶ 9   The trial court incorrectly decided that Frank could not be held liable for the Boomers' injuries as a matter of law.  While Frank is not liable for the imputed negligence of Rapisarda, he may be held liable for the violation of his duty to supervise her.

¶ 10   Frank is not liable for Rapisarda's negligence.  A driver's negligence generally is not imputed to a passenger absent special circumstances, such as when the passenger is the employer of the driver.  *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 74, at 530 & n.16 (5th ed.1984).  Arizona has not addressed imputed negligence under the particular circumstances of this case.  However, imputed negligence has been rejected outright in the contributory context.  *See Reed v. Hinderland*, 135 Ariz. 213, 219, 660 P.2d 464, 470 (1983) ("[D]octrine of imputed *contributory* negligence should be abandoned in the context of personal injury automobile negligence actions." (emphasis added)).  Moreover, many other courts have rejected the imputa-

tion of negligence in similar cases.  *See Forker v. Pomponio*, 60 N.J.Super. 278, 158 A.2d 849, 852 (1960) (negligence of permittee driver not imputable to supervisor); *Nowak v. Nowak*, 175 Conn. 112, 394 A.2d 716, 722 (1978) (learner driver's negligence could not be imputed to instructor); *Roberts v. Craig*, 124 Cal.App.2d 202, 268 P.2d 500, 503–04 (1954) (rejecting argument that negligence of permittee driver should be imputable to licensee where statute required supervision of permittee).

¶ 11   We are further persuaded not to recognize imputed negligence for the reasons stated in *Stanfield v. Tilghman*, 342 N.C. 389, 464 S.E.2d 294, 295–97 (1995), *overruling* 117 N.C.App. 292, 450 S.E.2d 751 (1994).  The court noted that one purpose of a learner's permit is to allow minors to practice driving "under the guidance and supervision of a licensed … statutorily approved person."  *Id.* at 297.  The court said that this public policy would be undermined by imputed negligence:

This period of practice driving is important so that permittees gain the driving experience necessary for them to safely operate a vehicle without supervision when they are awarded their driver's license.  If the permittee's negligent operation of a vehicle was imputed, in all instances as a matter of law to the supervising adult [or in Arizona, the supervising passenger], such adults … would be less inclined to serve as supervisors over a permittee's practice driving, thus militating against our public policy and practice regarding drivers' education.

*Id.*

¶ 12   Although we reject the idea of imputing Rapisarda's negligence to Frank, Frank's liability in negligence for failing to supervise is another matter.  His liability depends on whether "there [was] a duty or obligation, recognized by law, which require[d him] to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366.  The existence or non-existence of a duty is a question of law.  *Id.* at 356, 706 P.2d at 368.

¶ 13   A duty exists where "the relationship of the parties [is] such that the

defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Id.* The Boomers argue that A.R.S. section 28–415 (1996)[4] reveals that Frank owed a duty to supervise Rapisarda. We agree.

¶ 14 We interpret the statute in a manner consistent with the Legislature's apparent purpose. *See Arizona Life & Disability Ins. Guar. Fund v. Honeywell, Inc.,* 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997). The purpose of the statute is to require supervision of the licensed passenger.

The clear objective of the statute is to ensure that a permit driver is accompanied by a more experienced, licensed driver who can advise, assist and supervise the permit driver, therefore increasing public safety.... To construe the statute otherwise would be to render the requirement for a licensed driver meaningless, and would obviate the just and reasonable result intended by the legislature when it enacted [the statute].

*Pfund v. Ciesielczyk,* 84 Ohio App.3d 159, 616 N.E.2d 560, 565 (1992). The statutory purpose implies the existence of a duty to supervise.

¶ 15 Frank argues that the statute places a duty on the permittee driver rather than on the licensed passenger. While we agree that the statute imposes a duty on the permittee to ensure that a licensee is present, that does not address whether the licensee too has a duty. By placing a licensed passenger in the front seat with a permittee driver, the statute anticipates some supervision. This duty is distinct from any duty of the permittee to ensure that there is a licensed passenger present when she drives.

¶ 16 Our conclusion is supported by other states that have recognized the duty of a licensed driver to supervise a permittee. At least two states have concluded that the duty is derived from statute. In *Pfund,* the Ohio Court of Appeals interpreted a statute similar to ours.[5] It held that the statute imposed a duty on the licensed passenger to assist, instruct, or supervise the permittee driver. *Pfund,* 616 N.E.2d at 564–65. The New Jersey Superior Court likewise recognized a licensed passenger's statutory duty to supervise in *Forker,* 158 A.2d at 852.[6] The court determined that the licensee could be held liable for negligent supervision of the permittee when "his instructions were not reasonable under the circumstances or because he failed to take reasonable measures to observe ... danger and to attempt to avert it." *Id.*[7]

¶ 17 Frank argues that unlike the licensee in *Pfund,* he had not supervised or in-

4. The statute has been renumbered as A.R.S. section 28–3154.

5. The Ohio statute at issue stated in pertinent part:

The registrar of motor vehicles, or the deputy registrar, upon receiving from any person an application for a temporary instruction permit for a driver's license, may issue such a permit entitling the applicant, while having the permit in his immediate possession, to drive a motor vehicle other than a commercial motor vehicle, upon the highways *when accompanied by a licensed operator who is actually occupying a seat beside the driver.*

*Pfund,* 616 N.E.2d at 564 (quoting Ohio Rev. Code Ann. § 4507.05 (Anderson 1997) (emphasis added)).

6. The New Jersey statute at issue differed from A.R.S. section 28–415 and the statute in *Pfund* because it specified that the permittee be "under the supervision of a licensed motor vehicle driver." *Forker,* 158 A.2d at 851 (citing N.J. Stat. Ann. § 39:3–13 (West 1990)). Although the New Jersey statute is explicit, its purpose is the same as Arizona's.

7. Several state courts, including the Ohio court in *Pfund,* have found a duty on the part of a licensee to supervise a permittee based on common law. *See Pfund,* 616 N.E.2d at 565–66; *Kostecky v. Henry,* 113 Cal.App.3d 362, 170 Cal. Rptr. 197, 202–03 (1980) (examining legislative history of statute requiring licensed driver to accompany permittee and concluding that common-law determined extent and nature of supervision required); *Pierson v. Dayton,* 168 A.D.2d 173, 572 N.Y.S.2d 142, 144 (1991) (licensed driver supervising permittee owed duty to use reasonable care as instructor); *Lazofsky v. City of New York,* 22 A.D.2d 858, 254 N.Y.S.2d 349, 350–51 (1964) (licensed driver may be held liable for neglecting to use reasonable care as instructor). *But see Martino v. Leiva,* 133 Ill.App.3d 1006, 88 Ill.Dec. 935, 479 N.E.2d 955, 956–57 (1985) (implying that licensed passenger had no statutory or common-law duty to supervise permittee).

While Arizona has not recognized as expansive a common-law duty on the part of passengers generally as that in other states, Arizona courts have held that a passenger may have a duty to warn under exceptional circumstances. In

structed Rapisarda. Accordingly, he argues that he did not assume the duty to supervise her. In *Pfund*, the licensed passenger had accompanied and advised the permittee driver on prior occasions. 616 N.E.2d at 562–63. Frank claims he had no such history with Rapisarda. As for the day of the accident, Frank asserts that he offered Rapisarda no advice other than to turn her lights on. He further claims that reminding Rapisarda to turn on her lights was no more than "a courtesy he would extend to any driver he accompanied."

¶ 18 A history or pattern of supervising a permittee is not required by the statute and is not a prerequisite to the existence of a duty. Nor must Frank have accompanied Rapisarda for the specific purpose of supervising or have actually supervised her. Rapisarda possessed only a learner's permit and Frank's presence and supervisory role were required by law. *See Forker*, 158 A.2d at 852 ("[T]he fact that ... [licensee's] accompanying [permittee] is not for the specific purpose of instruction cannot absolve him from his statutory duty to exercise such supervision as the circumstances may reasonably call for."). *But see Kostecky v. Henry*, 113 Cal.App.3d 362, 170 Cal.Rptr. 197, 202 (1980) (whether licensed passenger in fact "supervised" permittee driver was a question for the jury). Regardless of whether Frank actually supervised, he was under a duty to do so. The concept of duty should not be confused with the specific details of conduct. *See Markowitz*, 146 Ariz. at 355, 706 P.2d at 367; *Alhambra Sch. Dist. v. Superior Ct.*, 165 Ariz. 38, 41, 796 P.2d 470, 473 (1990).

¶ 19 Having concluded that Frank had a duty to supervise Rapisarda, we now decide whether there is a genuine issue of material fact that Frank violated the duty. Sufficient evidence of breach of the duty exists to create a triable issue.

¶ 20 By accompanying Rapisarda, Frank was under a duty to exercise "reasonable care under the circumstances," *Markowitz*, 146 Ariz. at 356, 706 P.2d at 368, or "what a reasonably prudent licensed driver having supervision over a learner's operation of a vehicle would have done under the same or similar circumstances." *Kostecky*, 170 Cal. Rptr. at 203. Whether Frank exercised reasonable care in supervising Rapisarda under the circumstances is generally a jury question. Although in some cases as a matter of law the defendant's actions or inactions do not breach the applicable standard of conduct, the question of negligence is one of fact for the jury if reasonable people could differ as to whether Frank exercised reasonable care in supervising Rapisarda. *See Markowitz*, 146 Ariz. at 357–58, 706 P.2d at 369–70.

¶ 21 Rapisarda admitted her negligence, but that is not enough. The evidence must show Frank's negligence. His duty required him to "take necessary measures to prevent negligence on the part of the learner-driver." *Pierson*, 572 N.Y.S.2d at 144. For Frank to have breached his duty, he must have had a reason and an opportunity to act, have failed to adequately discharge his duty to supervise, and have thereby contributed to the cause of the accident.

*Mitchell v. Colquette*, the Arizona Supreme Court adopted a comment from the Restatement of Torts section 495, now Restatement (Second) Torts section 495, comment C, for determining passenger liability. *See Ingrum v. Tucson Yellow Cab Co.*, 131 Ariz. 523, 525–26, 642 P.2d 868, 870–71 (App.1981) (discussing *Mitchell*, 93 Ariz. 211, 215, 379 P.2d 757, 759–60 (1963) (examining whether contributory negligence on the part of the passenger barred recovery)). According to the Restatement, as adopted by the court in *Mitchell*, a passenger or guest is not required to keep a lookout except in exceptional circumstances. However, "if the plaintiff knows that at a particular point there will be a peculiar danger, which he has no reason to believe that the driver if unaided will perceive, the plaintiff may be ... negligen[t] if he does not keep himself in a posi-

tion to call the danger to the attention of the driver." *Mitchell*, 93 Ariz. at 215, 379 P.2d at 760 (quoting Restatement of Torts § 495 cmt. c (1934)); *Ingrum*, 131 Ariz. at 526, 642 P.2d at 871; *see also Southern Pac. R.R. Co. v. Mitchell*, 80 Ariz. 50, 62–63, 292 P.2d 827, 835 (1956) (citing *Humphrey v. Atchison, T. & S.F. Ry. Co.*, 50 Ariz. 167, 173, 70 P.2d 319, 322 (1937) ("While a passenger in an automobile is not required to assume the same responsibility for its operation as is the driver, he may not utterly disregard plain warnings of imminent danger, more apparent to him than to the driver, and fail to warn the latter.")). Our decision does not imply that passengers generally have a duty to supervise drivers; we hold only that such a duty exists when the passenger fills the statutory role with a learner permitee.

¶ 22 Although Rapisarda admitted negligence, Frank asserts that Rapisarda did nothing wrong. He claims that Rapisarda stopped completely at the stop sign, looked both ways, and proceeded slowly through the intersection. Frank contends that if he had noticed that she was speeding, he would have brought it to her attention.

¶ 23 Several witnesses controvert Frank's version of the accident. Witness Abrams, who was driving in the innermost westbound lane of Shea Boulevard, claimed that the Porsche driven by Rapisarda pulled out in front of her "at a high speed." She estimated the Porsche's speed at approximately forty-five miles per hour. Abrams also said that, based on the speed of the Porsche, it did not stop completely. Witnesses Currid and McCallick, a passenger in Currid's automobile, also stated that the Porsche was speeding. They were traveling eastbound in the center lane of Shea Boulevard, behind the Boomers' vehicle, and asserted that the Porsche entered the intersection "at a high rate of speed." Currid stated that he did not observe whether the Porsche actually stopped at the stop sign prior to entering the intersection, but offered that he did not believe it could have stopped given its speed.

¶ 24 Frank argues that the witness statements should not be considered under Rule 56(e) of the Arizona Rules of Civil Procedure because they are not based on personal knowledge and constitute inadmissible opinion testimony under Rule 701, Arizona Rules of Evidence ("Evidence Rules"). We disagree.

¶ 25 The statements were from eyewitnesses to the accident. All witnesses had observed the Porsche prior to the accident. Three of the four witnesses stated that the Porsche was speeding. One need not be an expert to offer the opinion that a vehicle was speeding. *See Southwestern Freight Lines, Ltd. v. Floyd*, 58 Ariz. 249, 263, 119 P.2d 120, 126–27 (1941) (plaintiff could estimate speed of truck that struck her). The witnesses were also entitled to offer the opinion that based on Rapisarda's speed, she did not stop at the stop sign. Evidence Rule 701 allows lay opinion testimony where it is rationally based on the witnesses' perceptions. *See Taylor v. Mueller*, 24 Ariz.App. 403, 408, 539 P.2d 517, 522 (App.1975) (witness opinions in affidavit based on own observations admissible). The evidence of Rapisarda's speed through the intersection permitted the inference that she had not stopped at the stop sign.

¶ 26 The reasonable inferences that may be drawn from the witness statements would allow a jury to find that Frank violated his duty to supervise Rapisarda. The statements permit the inference that Frank may have observed her fail to stop at the stop sign and proceed through the intersection at an unsafe speed in time to prevent a collision when she made her left turn. Although Frank states that he observed no problems with Rapisarda's driving prior to the accident, his credibility and the conflicts between his statement and those of other witnesses are matters for the jury. Moreover, Frank admitted in his deposition that he offered no advice when she made the turn.

¶ 27 Because Frank had a duty to supervise under A.R.S. section 28–415 and the evidence supports an inference that Frank violated this duty, the entry of summary judgment in his favor must be reversed and the case remanded.

CONCURRING: CECIL B. PATTERSON, JR., and EDWARD C. VOSS, JJ.